MAUD A. HAGEMAN

*v.*

WILLIAM A. HOLMES, Exr.

*Opinion filed April 17, 1899.*

1. CONTRACTS—*situation of the parties as an element of construction.* The liability of the promisor in a written contract must appear from the language of the instrument properly construed, and can not be extended upon the sole ground that the situation or circumstances of the parties would justify further or other liability.

2. BONDS—*language of bond construed.* A bond given by grantors to the grantee, binding them "in the amount for special assessment for the opening of Armour avenue," the condition clause of which recites the sale "subject to a special assessment which is now pending," and continues, "we hereby agree to pay said costs for the opening of Armour avenue in front of the said above described property," does not bind the grantors to pay an assessment levied after the dismissal of the proceeding then pending, although the avenue provided the only access to the property.

*In re Estate of Holmes,* 79 Ill. App. 59, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

A judgment was entered in the probate court of Cook county allowing a claim presented by appellant against the appellee, as executor of the estate of Charlotte E. Holmes, and on appeal judgment in the sum of $2408.12, in the same behalf, was rendered in the circuit court of said county. A further appeal to the Appellate Court for

the First District resulted in a judgment reversing that of the circuit court and not remanding the cause. This is an appeal from the judgment of the Appellate Court.

The judgment of the Appellate Court did not recite the facts found by that court. The cause was submitted in the circuit court upon an agreed state of facts, from which it appeared that one John Holmes and appellee's testatrix, who were then husband and wife, owned in fee simple, "share and share alike," a certain parcel of real estate situate between Fifty-eighth and Fifty-ninth streets, in the city of Chicago, but not abutting upon or touching either of said streets; that on the 31st day of August, 1891, they sold a portion of said parcel of land and conveyed the same to the appellant, (claimant,) and executed and delivered to her a warranty deed therefor in the ordinary statutory form; that the portion of said tract so sold to the appellant did not abut upon any street, alley or public way, but that an ordinance had previously been enacted by the city council of the city of Chicago providing for the opening of Armour avenue from Fifty-eighth to Fifty-ninth street and in front of said parcel of land so sold to appellant, and that condemnation proceedings under said ordinance were then pending in the circuit court of Cook county for the condemnation of the premises to be occupied by the said street, and that the parties entered into the following agreement:

"*Know all men by these presents*, That we, John Holmes and Charlotte E. Holmes, his wife, both of the city of Chicago, in the county of Cook and State of Illinois, are held and firmly bound unto Maud A. Hageman, of Chicago, in the county of Cook and State of Illinois, in the amount for special assessment for the opening of Armour avenue, for the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"Witness our hands and seals this 31st day of August, 1891.

"The condition of the above obligation is such, that whereas John Holmes and Charlotte E. Holmes, his wife, have sold the

following described property, viz., [here follows the same description contained in the deed,] to Maud A. Hageman, subject to a special assessment which is now pending on said property, and we hereby agree to pay said costs for the opening of Armour avenue in front of said above described property. We also hereby agree to assume and pay for the opening of alley between Dearborn street and Armour avenue in rear of said above described property. Now, if the said John Holmes and Charlotte E. Holmes shall perform all the covenants above mentioned then this obligation to be void, otherwise to remain in full force and effect.

JOHN HOLMES,     (Seal.)
CHARLOTTE E. HOLMES.     (Seal.)"

The following plat was also incorporated as a part of the agreed state of facts:

It further appeared from the agreement as to the facts, that the said ordinance providing for the extension

of Armour avenue, as aforesaid, was repealed on the 25th day of February, 1892, and that afterwards said condemnation proceedings were dismissed out of the said court; that on the 14th day of July, 1893, the city council of the said city adopted another ordinance ordering Armour avenue to be opened from Fifty-eighth to Fifty-ninth street, the cost thereof to be paid by special assessments, and that Armour avenue was opened by proceedings had under such ordinance, and as opened passed in front of the parcel of land so sold to appellant, and that the cost of making such improvement was regularly and lawfully assessed upon the property benefited, the premises so sold to said appellant being included, and that she paid the assessments so levied thereon in the total sum of $2600.96, including penalties and costs of collection; that said decedent and said John Holmes had notice of said assessments but failed to pay the same, and appellant was compelled to and did pay the same in order to relieve said property therefrom.

The questions of law involved arise from the rulings of the court upon propositions presented to be held as the law of the case. It appears from such propositions the court ruled that under a proper construction of the instrument executed by the testatrix and her husband the liability of the obligors in such instrument was not restricted to the payment of special assessments which might be levied upon the property sold to appellant in the condemnation and special assessment proceedings which were pending at the time the instrument or bond was executed, but that such bond created a liability upon the part of those signing the same to discharge the assessments levied upon the property by the ordinance afterwards adopted providing for the opening of said Armour avenue.

ALLEN & BLAKE, (STEIN & PLATT, of counsel,) for appellant.

E. W. ADKINSON, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

We think the circuit court erred in ruling on propositions of law touching the true construction of the bond. The undertaking of the obligors expressed in the bond is to pay "said costs for opening Armour avenue in front of said above described property." The antecedent of the word "said," preceding the word "costs," is "a special assessment now pending on said property," recited under a whereas which immediately precedes the clause in which the undertaking is expressed. The charges legally taxable in the special assessment proceeding, frequently called "cost" or "costs," are not mentioned in the statement of the facts under the whereas and could not be the antecedent of the word "said," but the obvious meaning of the word "costs" is the sum or amount of the expense entailed upon the premises in the special assessment proceeding, to which the word "said" has reference.

The position of counsel for appellant is stated in the brief, as follows: "We insist that the contract, taken in all its language and in view of the situation of the land and the parties at the time it was made, shows a clear intention that decedent and her husband should pay for opening up Armour avenue whenever and however that should be done, and that the parties have not used any language in their contract which precludes the court from adopting this view."

It will be perceived this position is based more largely upon the deductions which counsel draw from the "situation of the parties and the land" than from the meaning to be drawn from the language of the contract or bond. Indeed, the argument of counsel for appellant, carried to its logical conclusion, in practical effect is, the court should view the transaction from the standpoint occupied by the parties, and should consider the situation of the

property and determine what contract would, under such circumstances, have been made by a purchaser who was a thoughtful and prudent man and versed in affairs of trade and business, and should declare the contract which was made was that which such a purchaser would have made, unless the language of the bond precluded the court from giving that meaning to it. The situation of the parties, and the subject matter of the contract and the intention of the parties in making it, may be considered by the court as guides to the proper construction and interpretation of the language employed in a written instrument; but, as Mr. Parsons said, "if the contract is false to the actual meaning and purpose of the parties or of either party the remedy does not lie in construction." (2 Parsons on Contracts, 617.) The liability of the promising party to a written contract must affirmatively appear from the language of the instrument when properly interpreted and construed, and the liability so appearing cannot be extended or enlarged on the ground, alone, the situation and circumstances of the parties justified or demanded further or other liability. Moreover, it is by no means clear the situation of the property and of the parties justifies the conclusion the parties understood the obligors were bound to defray the cost of opening the avenue "however and whenever" it might be opened. It is beyond question the parties considered the fact access could not be had by means of any public way to the premises sold by the obligors, in the bond to appellant. They considered also the fact an ordinance had been passed to open the avenue along the greater length of the premises and that proceedings were then pending in the courts to effectuate the purpose of the ordinance. It is clear the parties acted in the transaction upon the basis the pending assessment proceeding would provide an avenue leading to and from the lots, and it only remained for them to arrange the consideration to be paid for the lots with reference to which of them should bear the liability of

paying the assessments adjudged against the lots in the assessment proceeding. The result was, the vendors of the property agreed to pay such assessments. Whether the assessment of benefits to the premises had been confirmed and fixed by the judgment of the courts does not expressly appear. If the benefits had been assessed the assessments would constitute a lien on the property, and the covenants of the deed would operate to require the grantors therein to discharge them. (Starr & Cur. Stat. 1896, chap. 24, par. 167, p. 778.) The fact the parties deemed it necessary to enter into a special agreement or bond obligating the grantors in the deed to pay the special assessments would indicate the assessments had not been confirmed against the premises. The fact no sum was named in the body of the bond proper as a penalty, and "the amount for special assessments," etc., was inserted as a substitute for the penalty, further indicates the amount of the assessment to be levied on the premises had not been determined. It would therefore seem the bond was executed for the reason the assessments which it was understood would be made in assessment proceedings were not liens upon the land, and hence not covered by the obligation of the covenants of the deed. The office the parties intended the bond to fulfill was to create a liability on the part of the vendors to pay the assessments, which did not devolve upon them by the covenants of the deed. It is manifest it did not occur to the parties the special assessment proceeding might be abandoned and dismissed. The course they would have pursued had it so occurred to them can be but a matter of mere conjecture. The appellant might have declined to buy the premises at all, or preferred to defer the trade until assured means of access to the property would be provided. The vendors might not have been willing to guarantee the proceeding would be pushed to a final conclusion. Nor does it follow from the fact they were willing to assume to pay the amount to be assessed in the pending

proceeding as benefits to the premises for the extension
of the avenue to and beyond the premises, they would
have been willing to obligate themselves to pay whatever
amounts might at any time thereafter be assessed for the
opening of the avenue. Had such agreement been de-
manded they might have refused to complete the sale
of the premises. They knew property of private owners
must be condemned in order to extend and open the ave-
nue. They knew the property necessary to be condemned
in the pending proceeding, and its present value, were
fairly matters of judgment. It might be, the property
necessary to be condemned would in the future increase
in value by reason of the erection of expensive buildings
thereon or because of the rapid rise in the price of prop-
erty in that locality. Furthermore, the width of the strip
to be condemned for the avenue, the manner in which the
roadway of the avenue was to be paved, and the nature,
character, locality and description of the improvement
to be made by the opening of Armour avenue in the pend-
ing proceeding, were known, and it could not be known
what character of an improvement made by future ordi-
nances might or would be. There could be no assurance
as to future conditions, or that the amount which such
an undertaking would entail upon them to pay would not
exceed the total consideration to be paid for the property.

The view of the Appellate Court is correct that the
liability of the obligors in the bond sued on is limited by
the true construction of that instrument to payment of
the assessments imposed on the premises in the special
assessment proceeding which was then pending.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*