Mary Mowrey, Appellee, v. Byron J. Mowrey and Hazeltine Electronics Corporation, Defendants. Byron J. Mowrey, Appellant.

Gen. No. 43,427.

Opinion filed February 14, 1946. Released for publication February 26, 1946.

SEYMOUR RADY, of Chicago, for appellant.

MICHAEL A. ROMANO and F. HAROLD BENNETT, both of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Mary Mowrey, filed a complaint for divorce against her husband, Byron J. Mowrey, who was a nonresident of Illinois, and obtained service upon him by publication. Thereafter she filed an amended complaint in which she made the Hazeltine Electronics Corporation, the employer of her husband, an additional party defendant and asked that said Hazeltine Electronics Corporation (hereinafter for convenience sometimes referred to as Hazeltine) "out of the salary, bonuses, or other funds now accrued in its hands, or which may hereafter accrue belonging to the defendant Byron J. Mowrey, be required to pay over and deliver to plaintiff such weekly or by-monthly sum or sums as this Court may determine to be fair and equitable as maintenance for the children of said Byron J. Mowrey and to pay over and deliver to plaintiff out of said funds such sum or sums as this Court may determine to be fair and equitable as and for plaintiff's costs and fees to her attorneys. . . ."

While Hazeltine's motion to dismiss the amended complaint as to it was pending and undisposed of, plaintiff was granted a decree of divorce on the ground of desertion and awarded the custody of the two minor children of herself and Mowrey. Subsequently, on June 14, 1944, on plaintiff's motion and verified petition, an order was entered which denied Hazeltine's motion to dismiss the amended complaint as to it and restrained and enjoined the Hazeltine Electronics Corporation "from paying over to the defendant Byron J. Mowrey out of his weekly earnings as an employee of said company, as they shall become due and payable to him, a sum of thirty-five ($35.00) dollars per week, and that said defendant Hazeltine Electronics Company shall retain and accumulate this weekly sum of thirty-five ($35.00) dollars out of such earnings of the defendant Byron J. Mowrey with said company until the further order of this court."

On July 7, 1944 plaintiff filed a petition which, after reciting the history of the proceedings up to that time, including the entry of the decree and the injunctional order, alleged that "by reason of the foregoing a substantial sum has accrued and accumulated in the hands of the defendant Hazeltine Electronics Company belonging to the defendant Byron·J. Mowrey from which sum this Court can and should order a proper amount paid over and delivered to the plaintiff as and for her alimony, ·child maintenance, costs of this proceeding and fees to plaintiff's attorneys." This petition concluded with the prayer that "an order be entered herein directing the defendant Hazeltine 'Electronics Company, out of the funds accrued and accumulated in its hands and belonging to the defendant Byron J. Mowrey, [to] pay such sum or sums of money as this Court shall find to be fair and equitable as and for plaintiff's alimony, child maintenance, costs of this proceeding and fees to plaintiff's attorneys. . . ."

After the hearing on plaintiff's foregoing petition had been continued several times Hazeltine filed an answer to same on January 6, 1945, in which it averred that from June 14, 1944, when the injunctional order was entered, until November 27, 1944, it had accumulated $910 by withholding $35 per week out of the earnings of the defendant, Byron J. Mowrey, as directed by said restraining order; that Mowrey had not been in its employ since November 27, 1944; and that it neither owed nor paid him anything since said date.

On January 12, 1945 Mowrey filed a special and limited appearance for the sole purpose of presenting a motion to dissolve the injunctional order theretofore entered on June 14, 1944, "for the reason that the Court did not have jurisdiction of this defendant, nor of any earnings of this person subsequent to the aforesaid date."

On February 13, 1945 the trial court entered an order which decreed as follows:

"That the motion of the defendant, Byron J. Mowrey, to vacate the injunctional order heretofore entered herein against the defendant, Hazeltine Electronics Company, be and the same is hereby denied;

"That the motion of plaintiff, Mary Mowrey, to strike the special appearance of the defendant, Byron J. Mowrey, be and the same is hereby denied;

"That plaintiff, Mary Mowrey, be and she is hereby allowed the sum of $15.00 per week as and for the support and maintenance of the two children of the parties, and that said allowance be and the same is hereby made *nunc pro tunc* as of July 7, 1944, in accordance with the order of this Court that date entered;

"That plaintiff, Mary Mowrey, be and she is hereby allowed the further sum of $445.00 as and for fees to her attorneys;

"That the sums now due plaintiff, Mary Mowrey, under this order, to-wit: $910.00 be paid over to her by the defendant, Byron J. Mowrey, within 3 days from the date of this order, or upon his failure so to do, then the defendant, Hazeltine Electronics Company, be and it is hereby ordered and directed to pay to plaintiff, Mary Mowrey, said sum of $910.00 out of the funds now in its hands and belonging to the defendant, Byron J. Mowrey."

Defendant, Byron J. Mowrey, appeals from the foregoing decretal order.

It is contended that "since no personal service was obtained on the defendant, Byron J. Mowrey, and since no specific property or chose in action belonging to Byron J. Mowrey in esse or in actual existence, located in the State of Illinois, was attached or reached by any process of the court, the court had no jurisdiction to enter the order of injunction complained of or the order appealed from."

The real question presented for our determination is whether a court of equity may in a divorce proceeding, for the purpose of compelling the support and maintenance of the minor children of the parties, order the sequestration of the future earnings or salary of a nonresident defendant husband who has been served by publication, such salary being payable by his employer within the jurisdiction of the court. In so far as we have been able to ascertain, this precise question has not heretofore been considered or determined by any court of review in this or any other jurisdiction.

It will be noted that the injunctional order directed Mowrey's employer to withhold $35 weekly from his salary as it "shall become due and payable to him" and to "retain and accumulate" these withholdings of $35 weekly until the further order of the court and that the fund of $910 which the chancellor ordered paid to plaintiff for the support and maintenance of the two minor children and for fees for her solicitor was accumulated by the defendant's employer solely from Mowrey's future earnings.

It is of course agreed that when there is no personal service upon a defendant in a divorce case and no appearance by him the court is without jurisdiction to enter a personal decree against him for the payment of alimony, maintenance of minor children, solicitor's fees or court costs. (*Proctor v. Proctor,* 215 Ill. 275.) It is also the rule that constructive service of process upon a nonresident defendant in a proceeding *in rem* against or concerning specific property of such defendant within the jurisdiction of the court will enable the court to render a decree which is binding upon such property. (*Wilson v. Smart,* 324 Ill. 276.) In the *Wilson* case the court said at p. 281:

"Although a Court is powerless to enter a personal decree based solely on constructive service or process

against a non-resident defendant, yet it has power to deal with his property within the court's territorial jurisdiction. Substituted service by publication and mailing, or in any other authorized form, is usually sufficient where the object of the action is to reach and dispose of property, or of some interest in property, within the state. Such service may answer in all actions which are substantially proceedings *in rem*."

It is true that in a proceeding *in rem*, where the service of process on a nonresident defendant has been merely by publication, the property within the jurisdiction of the court which it may reach and sequester is ordinarily property or some interest in property actually in existence. However, in *Tuttle v. Gunderson*, 254 Ill. App. 552, this court affirmed an order of the trial court entered in a divorce case, wherein the defendant husband was a nonresident and was served by publication, which directed the trustees of a trust fund, said husband being the sole beneficiary of the income therefrom, to "sequester from said income of said trust estate as the same comes into the hands of said trustees the sum of One Hundred Dollars per week, and pay the same over to said complainant, Agnes Tuttle, in installments convenient to said trustees." In the *Tuttle* case the property ordered sequestered was not actually in existence but was a portion of the income of a trust fund which would come "into the hands" of the trustees in *futuro*. While the factual situation in the *Tuttle* case was different from that in this case, we think that the holding in that case that future income might be reached and sequestered applies with equal force here. There the father of the defendant husband left a will in which he provided for the establishment of a trust fund of $250,000, the defendant to receive the entire income therefrom, amounting to about $15,000 a year, until he was 50 years old. The parties were married during the lifetime of the testator and before he executed the last

codicil to his will creating the trust estate. That case was decided by this court on the theory that the defendant's wife and children had an equitable interest in the income of the trust fund to the extent of their support and maintenance because the testator unquestionably intended by his will to provide for their support as well as that of his son out of said income. In concluding his opinion in the *Tuttle* case Mr. Justice Scanlan said at pp. 568–569: "The chancellor, in the order, was dealing solely with the property of the defendant, and it is the law that courts of equity have jurisdiction in divorce proceedings, in the absence of personal service upon or appearance by a defendant, to deal with property of the defendant in the jurisdiction of the court through a decree *in rem*." There is this analogy between the *Tuttle* case and the instant case. In that case the trust fund was actually in existence when the order of sequestration was entered and said order directed that part of the income from said trust fund be sequestered as it accrued. In this case defendant's property in his work or position, as will be hereinafter shown, was actually in existence at the time the order of sequestration was entered and said order directed that part of his earnings from said position be sequestered as such earnings accrued.

This brings us to the consideration of the question as to whether defendant's job or position constituted property. It is asserted in Mowrey's brief that "counsel for defendant has not been able to find any case which holds that a job, or the right thereto, is property." There are numerous authorities that hold that a man's labor or right to labor is property. In *Frorer v. People,* 141 Ill. 171, the Supreme Court declared unconstitutional certain sections of "An Act to provide for the payment of wages in lawful money, and to prohibit the truck system, and to prevent deduction from wages, except for lawful money actually advanced." In the opinion filed in that case Mr. Jus-

tice SCHOLFIELD quoted with approval from *State v. Goodwill,* 33 W. Va. 179, wherein it was stated (p. 183):

"The property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands; and to hinder him from employing these in what manner he may think proper, without injury to his neighbor, is a plain violation of this most sacred property."

In *Braceville Coal Co. v. People,* 147 Ill. 66, the Supreme Court in holding unconstitutional an "Act to provide for the weekly payment of wages by corporations," stated at p. 71: "Labor is the primary foundation of all wealth. The property which each one has in his own labor is the common heritage . . . ."

In *Mallin v. Wenham,* 209 Ill. 252, in holding that an assignment of wages to be earned in the future under an existing employment, even though the employment is for an indefinite time, is not against public policy and is valid if made for a valuable consideration and untainted with fraud, the court said at p. 254: "It is true, such employment was not of any definite duration, and appellant might abandon the same at any time or his employer might discharge him. The subject matter of the contract had but a potential existence, but it was such a property right as might legally be disposed of."

In *Massie v. Cessna,* 239 Ill. 352, wherein the Supreme Court held invalid a legislative enactment of 1905, entitled "An Act in relation to the assignment of wages, income or salary," it was said at p. 358: "The right to labor for and to render services to another, and the right to dispose of the compensation to be received for so doing, are property rights within the meaning of the language just quoted from the constitution [section 2 of article 2 of the constitution of this

State, which provides that 'no person shall be deprived of life, liberty or property without due process of law'].''

From the foregoing authorities it conclusively appears that the right to labor is a property right and that the property which every man has in his own labor is the highest form of property. Labor in its ordinary acceptation is synonymous with employment, job or position and when it is said that a man has property in his own labor, such property includes not only his labor itself but what it produces by way of wages or salary. It will be noted that the decision in *Mallin v. Wenham, supra,* justifies the right of a wage earner. to assign his future wages upon the theory that they constitute a property right that might be legally disposed of, even though they had but a potential existence. Since the defendant in the instant case had control of his future earnings to the extent that he could have disposed of them by assignment, how then can it be said that the portion of his salary that his employer was ordered to sequester and accumulate was not such a property right or interest in property as a court of equity could reach and dispose of to enforce the support and maintenance of his children? Earnings were bound to accrue from his position as long as he remained therein. Since the property which defendant had in his position was in existence at the time the order of sequestration was entered and was within the jurisdiction of the court and since, as we have already held, a man's property in his labor includes not only his labor itself but the emoluments thereof, we can conceive of no sound reason why defendant's salary, payable as it was, within the jurisdiction of the court could not be subjected to the support and maintenance of his minor children.

Defendant contends that in the absence of personal service upon or appearance by the defendant the trial court had no authority to include the first of the

following alternative directions in its decretal order: "that the sums now due plaintiff, Mary Mowrey, under this order, to-wit: $910 be paid over to her by the defendant, Byron J. Mowrey, within 3 days from the date of this order, or upon his failure so to do, then the defendant, Hazeltine Electronics Company, be and it is hereby ordered and directed to pay to plaintiff, Mary Mowrey, said sum of $910 out of the funds now in its hands and belonging to the defendant, Byron J. Mowrey." In other words defendant claims that the trial court had no authority in the absence of personal service or his appearance to direct him to personally pay plaintiff the $910 involved herein and that this direction rendered the decretal order a personal decree rather than a decree *in rem*. This contention is completely answered in *Cox v. Cox*, 192 Ill. App. 286, where the court considered the identical question. In that case it was said at p. 295:

"Such a decree is not a decree *in personam* but is a decree *in rem*. . . . Even if the decree in terms, orders the principal defendant to pay the amount found to be due to complainant within a specific time, or that in default thereof, the property of such defendant be sold to satisfy the same, the alternative feature of such a decree preserves its character as a decree *in rem* and does not make it a personal money decree against the defendant."

We are impelled to hold that the decretal order was properly entered and it will therefore be affirmed.

*Decretal order affirmed.*

SCANLAN, J., concurs.
FRIEND, P. J., dissents.