Louis H. Kleinhans, Plaintiff-Appellant, v. G. L. Reasor, Trading as Reasor Manufacturing Company, Defendant-Appellee.

Gen. No. 10,541.

Opinion filed February 1, 1952.
Released for publication February 19, 1952.

PAULSON, MORGAN & JORDAN, of Elgin, and CLEMENT V. JACOBS, of Dayton, Ohio, for appellant.

REID & OCHSENSCHLAGER, of Aurora, and POPE & BALLARD, of Chicago, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

Appellant, Louis H. Kleinhans, filed this action on June 11, 1948, in the circuit court of Kane county against appellee, G. L. Reasor, doing business as Reasor Manufacturing Company, to recover the sum of $18,728.24 as commissions alleged to have been earned by him while in the employ of appellee as a manufacturer's agent. After a trial before the court, a judgment in bar of the action and for costs was entered in favor of appellee and against appellant, and to reverse this judgment the plaintiff below appeals.

In his amended complaint appellant alleged that prior to April 15, 1944, appellee was in the business of manufacturing machinery and equipment in the City of St. Charles, Illinois; that prior to that time appellant had been employed by appellee as a manufacturer's agent on a salary basis for the purpose of pro-

curing manufacturing business for the appellee; that on April 15, 1944, appellant and appellee entered into a new employment arrangement whereby the appellee agreed to pay appellant as compensation for his services a commission or engineering fee of three per cent of all business secured through his efforts, whether it was government or nongovernment business, and in addition thereto, a monthly salary of $300, which arrangement it was agreed should continue for ninety days in order that the parties might determine the advisability of continuing the same; that on June 23, 1944, this employment agreement was modified to the extent that the $300 monthly salary should be discontinued.

The amended complaint further alleged that in pursuance of the foregoing agreement, appellant procured government contracts totaling the sum of $923,311.32 on which he is entitled to a commission of three per cent; that appellee had paid appellant a total of $8,800 on account of commissions earned plus the additional sum of $171.08, leaving a balance due appellant of $18,728.24, for which sum he prayed judgment.

The appellee answered the amended complaint and admitted the execution of the contract dated April 15, 1944, but denied that the appellant earned the commissions which he claimed and alleged that appellant had been paid in full. As an additional defense, appellee alleged that all of the contracts upon which appellant sought to recover a commission were with the United States Government and were by their terms subject to cancellation, and that said contracts had been partially cancelled and that appellant had been paid commissions on the full sum collected by appellee from the Government.

The written contract of employment upon which appellant predicates this action, so far as pertinent here, is as follows:

"April 15, 1944

"Dear Mr. Kleinhans:

"While you were at the office this week to discuss a revision you would like in your employment arrangement, I am sorry I did not know that you intended to catch a noon train as otherwise I would have planned to set everything aside and conclude our discussions. . . . I believe that your efforts can be devoted for other interests besides ours so that your compensation can be thereby materially increased. The amended plan of employment that you propose as I understand it, is as follows:

"1—From and after April 15, 1944, it is understood that you will not be required to devote substantially your whole time and effort during reasonable working hours to our business, but that you may represent in conjunction with our activities such additional companies as you may see fit, provided however that you will not represent companies in direct competition with our activities without first securing our consent.

"2—As compensation for your services you are to receive an engineering fee of 3 per cent on the business secured through your efforts, whether it be government or nongovernment business.

"3— . . .

"4—From and after April 15, 1944, we will pay you the sum of $300.00 monthly as an advance on the commission compensation to be earned, . . .

"5— . . .

"If the above is in accordance with your understanding, it is agreeable with me that it will be effective beginning April 15, 1944, for a trial period of 90 days. On or before July the 15th, we will determine the mutual advisability of continuing or changing the arrangement.

"Your acception below will put this plan into operation immediately.

REASOR MANUFACTURING COMPANY<br>G. L. Reasor

"Approved and accepted by Louis H. Kleinhans."

On November 15, 1943, these same parties entered into an agreement whereby appellee agreed to employ appellant for a period of five years subject to cancellation by either party upon a thirty-day written notice. By this contract appellant agreed to devote substantially his whole time and efforts to the business of appellee. The fourth paragraph of this contract of employment is as follows:

"4. For his services, the Party of the Second Part shall receive a salary of five thousand dollars ($5,000.00) per annum, payable on a weekly basis, and in addition he shall receive a commission of not exceeding three per cent (3%) of net sales on all business procured by him except government prime contracts and government sub-contracts, it being expressly understood that no commissions are payable on business secured through government contracts or sub-contracts. The maximum compensation payable in any calendar year, including both salary and commission, shall not exceed twelve thousand dollars ($12,000.00). Commissions shall be due and payable only when and if payment is received by the Company on business subject to commission."

Appellant states in his brief that his entire claim is based upon a construction of the employment agreement of April 15, 1944, and calls our attention to paragraph two of that agreement, which provides that he is to receive an engineering fee of 3 per cent (3%) on the business secured through his efforts, whether it be government or nongovernment business. It appears

from the record that in deciding this case the trial court construed the agreements of April 15, 1944, and November 15, 1943, together and concluded that the language of the latter part of paragraph four of the agreement of November 15, 1943, was not changed by the subsequent agreement of April 15, 1944. In so construing said agreement, the appellant contends that the lower court committed error and this is the sole error relied upon for a reversal. Appellee concedes that the only issue on this appeal is the proper construction of the employment agreements.

 This controversy hinges upon the meaning to be given the expression "business secured" which appears in the employment agreement of April 15, 1944. The appellant insists that this phrase is free from ambiguity and that it means the same as "business obtained" without regard to whether this business was subsequently cancelled or not, while appellee insists that the term is ambiguous, and, therefore, must be construed in the light of all the circumstances surrounding the entire transaction, and that evidence was, therefore, properly admitted by the trial court of the surrounding circumstances to aid in the construction of the disputed phrase. No authority is cited by the appellant in support of his position that the expression "business secured" has a well-established meaning and that it is free from ambiguity, and our research on this question has revealed no such authority. It is true that a court may not, under the guise of construction, make a new or different contract for the parties (*Englestein v. Mintz,* 345 Ill. 48, 60; *Gibbs v. People's Nat. Bank of Claremont,* 198 Ill. 307), and before a court may look at the surrounding circumstances, there must be some ambiguity in the language of the instrument (*Englestein v. Mintz, supra; Hageman v. Holmes,* 179 Ill. 275). It is also true that where the meaning of a written instrument is uncertain and ambiguous, evidence concerning the relations of the

parties and the circumstances surrounding the transaction is admissible in order to ascertain the true intent and the true meaning of the instrument under consideration. (*Schneider v. Neubert,* 308 Ill. 40; *Weger v. Robinson Nash Motor Co.,* 340 Ill. 81).

It is significant, we believe, that the agreement of April 15, 1944, refers to a "revision" in the employment arrangement of November 15, 1943, and designates the new agreement as "the amended plan of employment."

The evidence showed that the total amount of government contracts negotiated by appellant totaled $923,311.32. Appellee received only $12,890.77 for goods actually delivered to the government on the contracts negotiated by appellant prior to their cancellation. Appellee filed a termination claim, as permitted by the government contracts, and received on his claim $285,396.24 and paid to appellant 3 per cent of the entire amount he received, which amounted to $8,948.60. Appellant seeks by his suit to collect a 3 per cent commission on the $625,024.31 of government contracts which he negotiated but which were cancelled by the government upon the termination of the war. The evidence further disclosed that after the agreement of April 15, 1944, appellant obtained several large government contracts on which he asked for and was paid advances against commissions "when, and if earned" of $1,000 a month during several months of 1945. The notation "when, as and if earned" appeared on the vouchers which accompanied appellee's checks to appellant, and appellant accepted the checks and the vouchers without objection. About May 3, 1946, appellant accepted a check in the amount of $171.08, which check was accompanied by a voucher stating: "Commission due 1945 as per statement of May 3, 1946." This statement of May 3, 1946, showed that appellee was paying appellant a 3 per cent commission on $289,036.11. The amount of the commission,

therefore, amounted to $8,671.08 of which $8,500 had been paid, leaving the aforesaid balance of $171.08. Appellant made no objection to the voucher or the statement of May 3rd.

Appellee's plant manager testified that he was present at the time of the conversation between appellant and appellee concerning the agreement of April 15, 1944, and that there was no reference in this conversation by either party to changing the basis for computing the commissions as set forth in the agreement of November 15, 1943. Appellant testified that he knew that the government contracts which he negotiated contained cancellation and termination provisions. Appellant also knew that the claim which appellee made to the government under the termination provisions of his contracts with the government contained an item of $6,000 for services rendered by appellant and he made no objection to this item nor did he claim a greater amount. In December, 1945, after the government had cancelled its contract with appellee and when the termination proceedings were nearing completion, appellant conferred with appellee in the latter's office and told appellee that he would have about $2,500 coming out of the termination proceedings and requested that appellee pay him that amount as a final advance because he said he needed money, and appellee, thereupon, issued to him a check for that amount as he estimated that appellant's commissions would approximate that sum. After the payment of $171.08 on May 3, 1946, appellant and appellee entered into a different employment arrangement and some few months later entered into still another employment arrangement. Appellant, at the time of these different employments, did not claim that any commissions were due him arising out of his prior employment.

From our study of this record, it appears that both parties to the agreement of April 15, 1944,

interpreted this agreement to mean that no commission would be due on any contract negotiated by the appellant unless said contract was completed, which is in accord with that part of the agreement of November 15, 1943, containing the provision ''commissions shall be due and payable only when and if payment is received by the company on business subject to commission.'' The interpretation of parties to an agreement such as this may be proved and is often entitled to great weight in arriving at the intention of the parties. (*Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102; *Sholl Bros. v. Peoria & Pekin Union Ry. Co.*, 276 Ill. 267; *Whalen v. Stephens*, 193 Ill. 121.)

The expression ''business secured'' as used by the parties to this contract does not have such a definite, precise and accepted meaning which would have warranted the trial court to have refused to consider the evidence offered concerning the conduct and relationship of the parties, their course of dealings, together with the circumstances surrounding the parties at the time of the execution of the agreement of April 15, 1944. The judgment of the trial court clearly reflects the expressed intention of the parties thereto and that judgment will, therefore, be affirmed.

*Judgment affirmed.*