James W. Belanger, Wendla K. Osterberg, Inez M. Pond, May C. Cleary, and Bert V. Robins, Appellees, v. Seay & Thomas, Inc., an Illinois Corporation, Appellant.

**Gen. No. 48,116.**

First District, Second Division.

December 20, 1960.

Fisher, Hassen & Fisher, of Chicago (Joseph Fisher and Samuel R. Hassen, of counsel) for appellant.

MacLeish, Spray, Price & Underwood, of Chicago (Joseph W. Townsend and Claude E. Carr, Jr., of counsel) for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

On February 21, 1958 Gordon Strong and Company (Strong), engaged in the real estate management business, entered into a contract for the sale to defendant of all its capital stock for its net worth as determined by a balance sheet of the corporation, plus $30,000.00. By the terms of the contract of sale, defendant became the sole owner of Strong with the right to use the name Gordon Strong and Company, and acquired the good will and all real assets of the company which consisted of management contracts covering several office buildings, one of which was the Republic Building at 209 South State Street in Chicago. Payment of a portion of the total purchase price was made contingent upon the retention by Strong of management of the building, in accordance with paragraph 9, which reads as follows:

> "9.  It is also mutually agreed that the full purchase price hereinabove provided for is based on the assumption that Gordon Strong and Company, under its new management or purchaser, will be able to retain the management of 'The Republic,' the building located at 209 S. State Street, Chicago, Illinois. It is further agreed that there is

267

a reasonable risk that said building may be sold by the present owner and the management lost to Gordon Strong and Company or Purchaser. Accordingly, the parties do hereby agree that payment of $15,000.00 of the purchase price shall be deferred and shall be contingent upon Gordon Strong and Company and/or Purchaser retaining such management of The Republic as follows:

"For each calendar month following February 28, 1958, for which Gordon Strong and Company or Purchaser as its successor shall retain the management of said building known as 'The Republic,' Purchaser will pay to the Sellers the sum of $1250.00, for a period of not to exceed twelve (12) calendar months. Said payment, if due for the month of March, 1958, shall be payable at the date of closing, and for each subsequent month for which it may be due shall be payable on or before the 15th day of such month, and shall be paid to the Sellers herein named and shall be distributed by them among the selling shareholders pro rata in accordance with the number of shares sold by each selling shareholder, making no distinction between the Class A and Class B shares. Such monthly payments shall terminate at the end of twelve (12) consecutive months, or with the last month for which Gordon Strong and Company or Purchaser has retained the management of said building and has collected rents therefrom, whichever shall first occur."

After the contract was entered into, payment was made of the first four of the twelve contingent payments of $1250.00 each. When the Republic Building was sold on June 30, 1958, the original management contract under which Strong managed the building was terminated; on July 1, 1958 Strong resumed management of the building under a contract entered into

with the new owners, and continued to manage the building throughout the twelve-month period contemplated in the contract between plaintiffs and defendant. In consequence of the sale, however, defendant refused to pay the remaining eight installments, aggregating $10,000.00, asserting that under paragraph 9 it was released from making such payments. Thereupon, plaintiffs brought suit for the claimed balance. The court allowed their motion for summary judgment, and this appeal followed.

■ Defendant takes the position that paragraph 9 required monthly payments to be made only so long as the original management contract remained in force. On the other hand, plaintiffs contend that such payments were to continue over the one-year period provided that Strong retained the management of the Republic Building during that time. In this situation, the controversy is to be resolved by an interpretation of paragraph 9. Does it mean, as defendant argues, that payments were to cease if the original management contract terminated as the result of the sale of the building; or does it mean, as plaintiffs contend, that payments were to continue during the twelve-month period provided that Strong continued to manage the building? It is urged by defendant that the language of the agreement is susceptible of both interpretations and is therefore ambiguous, that issues of fact exist under which the court should have permitted the admission of extraneous evidence to determine the intention of the parties, and that it was error to enter summary judgment.

■ We are asked to interpret the meaning of the language "retain the management" and to decide whether it means only that the management should be continuous, or whether it means that the management must continue with the same contract and possibly the same owner. Plaintiffs' motion for summary

269

judgment without supporting affidavits was answered by defendant's three affidavits in opposition. In an affidavit by Bert Robins, which defendant presented in an attempt to show that a question of fact exists, affiant, resident manager of the Republic Building for Strong, states that it was his understanding that defendant would pay plaintiffs the sum of $1250.00 a month only so long as defendant managed the Republic Building for the Northern Trust Company. His understanding of what the contract meant is based on a letter he saw, written by plaintiffs' attorney and addressed to Mr. Belanger, one of the plaintiffs, confirming this "understanding." It is clear, however, that under the circumstances the understanding of one of the parties to a contract would be inadmissible as evidence. "The object of construction," the court said (p. 591) in Abingdon Bank & Trust Co. v. Bulkeley, 390 Ill. 582, 62 N.E.2d 447 (1945), "is to ascertain the intention which the parties have expressed in the language of the contract, and where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties," citing Green v. Ashland State Bank, 346 Ill. 174 (1931). See also Saddler v. Nat'l Bank of Bloomington, 403 Ill. 218, 85 N.E.2d 733 (1949), and Chicago Land Clearance Commission v. Jones, 13 Ill.App.2d 554, 142 N.E. 2d 800 (1957).

Defendant submitted to the court two other affidavits, both by Thomas F. Seay of the defendant corporation. In the first of these affiant states that at the time of execution of the agreement it was the intent that the payments required to be made would terminate if and when the Republic Building would be sold and the management of the building for the Northern Trust Company terminated. He also states that the first management contract was terminated

June 30, 1958; this is admitted. In his second affidavit Mr. Seay alleges certain conversations which he says took place during the negotiation of the sale. These likewise would be inadmissible under the cases cited above. He also sets out some of the circumstances surrounding the execution of the second management contract and some of its alleged disadvantages; these circumstances, we think, would be irrelevant to an interpretation of the agreement. The two management contracts, incidentally, are substantially identical as to terms. Under these circumstances we have concluded that the affidavits are either inadmissible for the reasons indicated, or should not be considered as affording evidence tending to vary or to determine the meaning of the phrase "retain the management," as set forth in paragraph 9.

██ ██ The rule is well settled that "a contract is to be construed as a whole, giving meaning and effect to every provision and word, if possible, . . ." Gay v. S. N. Nielsen Co., 18 Ill.App.2d 368, 376, 152 N.E.2d 468 (1958). Accordingly, all the words in paragraph 9, as well as the language of the contract as a whole, must be taken into consideration. The first sentence of paragraph 9 states: "It is also mutually agreed that the full purchase price hereinabove provided for is based on the assumption that Gordon Strong and Company . . . *will be able to retain the management* of 'The Republic . . .'" The third sentence reads, in part: ". . . payment . . . shall be contingent upon Gordon Strong and Company . . . *retaining such management* . . ." The following sentence states that payments are to be made for each month "for which Gordon Strong and Company . . . *shall retain the management of said building* . . ." The final sentence reads, in part: "Such monthly payments shall terminate at the end of twelve (12) consecutive months, or with the last month for which Gordon Strong and

271

Company . . . *has retained the management of said building and has collected the rents therefrom,* whichever shall first occur." (All italics ours.) Although the possibility that the building may be sold is mentioned once in paragraph 9, the controlling consideration is that the payments are stated to depend upon the retention by Strong of the management of the building. It would thus appear that the reference to the sale of the building is meant only in a precautionary sense, namely, to indicate that the management of the building might be lost through no fault of Strong. If this contingency had not existed, there would have been no need for paragraph 9, since plaintiffs would not be expected to guarantee defendant against loss of the management due to incompetence.

From an examination of the contract, we think that the parties clearly intended to make the contingent payments depend upon a matter of substance and not upon a technicality. So long as defendant and Strong received the benefits pertaining to management of the Republic Building, the parties must have intended the monthly payments to continue; and to say that the payments were to terminate at the time the original management contract terminated would allow defendant to retain the benefits of managing the building and at the same time release it from paying for this asset. Any other construction would run counter to the expressed intention of the parties.

Evidently paragraph 9 was inserted in the agreement to protect defendant against the loss of a valuable asset of the company it was buying—the asset of the continuing management of the building—not in the right of any specific contract of management. This conclusion is supported by the language of the paragraph which refers throughout, as hereinbefore indicated, to retention of the management and not to a management contract. It is an admitted fact that

Strong managed the Republic Building throughout the entire twelve-month period contemplated, although under two separate management contracts. From this circumstance it is fair to conclude that Strong retained the management of the building within the meaning of paragraph 9. Any other construction would be strained and would require reading "management" as "management contract." Taking into account the entire written agreement, we are of opinion that there was no ambiguity in the controverted language "retain the management"; that it means only that the management should be continuous, not that it had to be under the same contract and possibly the same owner.

We think that the controversy was properly resolved by the interpretation of the contract adopted by the court. The summary judgment is therefore affirmed.

Judgment affirmed.

BURKE, P. J., and BRYANT, J., concur.