Marjorie V. Donahue, as Administrator of the Estate of Joseph A. Donahue, Deceased, Plaintiff-Appellant, v. Rockford Showcase & Fixture Co., Defendant-Appellee.

Gen. No. 66–54.

Second District.

January 13, 1967.

Brown, Connolly and Oliver, of Rockford, for appellant.

Cannariato, Nicolosi & Pigatti, of Rockford, for appellee.

JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from a Declaratory Judgment entered February 18, 1966, by the Circuit Court of the 17th Judicial Circuit, Winnebago County, that found that the parties to the suit had entered into a "valid written contract" of employment that was, however, for an indefinite period of time and hence terminable at will. It also found that the plaintiff was entitled to damages in the amount of $5,087.92 for commissions earned under the terms of the contract prior to its termination.

Joseph A. Donahue, the original plaintiff, died subsequent to the trial, and his widow, as Administrator of his Estate, has been substituted as party plaintiff and appellant. For the sake of clarity we will refer only to the actions of Donahue and describe him simply as the plaintiff.

In July, 1962, the plaintiff was employed by the defendant, Rockford Showcase & Fixture Co. and given the title of "Executive Vice-President." His functions as an employee were to represent the defendant within a certain specified area and to sell its products, principally wooden displays and related items. The plaintiff con-

tinued to work for the defendant in that capacity through December of 1963 and was to receive by mutual agreement, a salary of $850 per month.

Sometime in December, 1963, the plaintiff discussed a modification of the association with an officer of the defendant corporation. In accordance with that discussion, the plaintiff, on January 19, 1964, wrote a letter to Mr. W. G. Michaelsen, as president of Rockford Showcase. The letter indicates that the parties agreed that subsequent to January 1, 1964, the plaintiff would receive a commission of 8% on all shipments of defendant's products to customers "contacted and developed" by him in place of the monthly salary under the former, oral agreement. The letter specified in considerable detail those activities that the plaintiff would continue to perform on behalf of Showcase. It also provided that "Due to my contributions of abnormally high expenses, relying on reorders for actual net compensation above expenses, the agreement to run until cancelled by mutual consent of both parties or changed by mutual consent." The letter was signed by Michaelsen, as president, under the signature of the plaintiff, on January 27, 1964.

On February 4, 1964, the plaintiff wrote a second letter to Michaelsen that stated "Your fairness in dealing with me relative to the commission agreement of January 19, 1964, has prompted the suggestions that the two items below be made an addition to that agreement." The first of the "items" provided that the plaintiff would be entitled to his commission on all reorders from his customers for a period of 30 months after the initial shipment. The second item was stated as follows:

> "In order to protect you relatively to my aggressively contacting prospective customers and obtaining orders from them and not relying on reorders to return a minor amount of commission, I suggest that

49

if my shipments, in any twelve month period, fall below twenty five thousand, neither gasoline and oil mileage nor commissions would be justified and as a result our agreement would be automatically cancelled. This would protect you and myself.

Sincerely,
/s/ Joseph A. Donahue"

This letter was also cosigned by Michaelsen as president.

Thereafter, some dispute arose between the parties in regard to back salary due the plaintiff for his services prior to January 1, 1964. On March 20, 1964, the defendant notified plaintiff by mail "that effective March 19, 1964, your association with Rockford Showcase & Fixture Co." is terminated. Plaintiff returned a key, as requested by the defendant, by mail on April 5, 1964.

During trial, and in this appeal, the plaintiff contends (1) that the letters of January 19 and February 4, 1964, constituted a valid, binding contract of employment between the parties; (2) that by its terms the contract was to terminate only if the commissions of the plaintiff were to fall below $25,000 in any one year; and (3) that therefore the unilateral termination of the employment by the defendant on March 19, 1964, was a breach of that contract since there was no lawful basis to discharge him.

The defendant urged, at the trial, that the letters did not constitute a contract but inasmuch as the trial court, correctly in our opinion, determined that they did, and neither party has appealed from that portion of the judgment order, we will not concern ourselves with that point. Likewise, we will not consider the dispute as to whether the alleged misconduct of the plaintiff established sufficient cause to discharge him prior to the expiration of the duration of the agreement.

The plaintiff would have us hold that the agreement clearly established the intention of the parties and

50

that it is not, therefore, subject to the construction of the court. It is, of course, true that the court will not resort to rules of construction where the agreement itself is clear and unambiguous. Herlihy Mid-Continent Co. v. Sanitary Dist. of Chicago, 390 Ill 160, 166, 60 NE2d 882; Illinois State Toll Highway Commission ex rel. Patten Tractor & Equipment Co. v. M. J. Boyle & Co., 38 Ill App 2d 38, 51, 186 NE2d 390. It is significant, however, that it was the plaintiff who brought the Declaratory Judgment action to have the court declare the rights and duties of the parties under the agreement and it is our opinion that, under the circumstances, construction is necessary.

■■■■ A contract, under certain circumstances, will be construed by the court to give effect to the intention of the parties where the terms of the agreement itself are not clear or are ambiguous. The intention of the parties to the agreement will be ascertained by an examination of all the facts and circumstances manifested by the evidence, including the relationship of the parties, the subject matter of the contract, and the purpose or object for which it was created. Kleinhans v. Reasor, 345 Ill App 467, 472, 473, 103 NE2d 655; Meeks v. George A. Fuller Co., 40 Ill App2d 172, 177, 189 NE2d 387. The agreement will be construed as a whole to give meaning to all the provisions that are contained in it. De Tienne v. S. N. Nielsen Co., 45 Ill App2d 231, 234, 195 NE2d 240; Belanger v. Seay & Thomas, Inc., 28 Ill App2d 266, 271, 171 NE2d 418. The contract will be construed most strongly against the party who prepared it for the reason that he chose the words to be used and is therefore more responsible for the existence of the ambiguity. Gothberg v. Nemerovski, 58 Ill App2d 372, 382, 208 NE2d 12; Dixon v. Montgomery Ward & Co., Inc., 351 Ill App 75, 89, 114 NE2d 44. The court will also consider the practical construction that the parties themselves have applied to the contract by their contemporaneous or subsequent conduct. Cedar Park Cemetery Ass'n v. Village of Calu-

51

met Park, 398 Ill 324, 335, 75 NE2d 874; Weger v. Robinson Nash Motor Co., 340 Ill 81, 91, 172 NE 7.

■ When we apply these principles to the letters of January 19 and February 4, we agree with the construction given to them by the trial court. The letters were written by the plaintiff, who was also a Law School graduate, and must be construed most strongly against him. The parties had, prior to January 1, 1964, been associated by an uncomplicated arrangement—the plaintiff was to be paid $850 a month to represent the defendant and sell its products. Thereafter, this relationship was modified by mutual agreement. The plaintiff was to continue his former activities on behalf of the defendant but was to receive a commission on sales to his customers rather than a regular salary. This new relationship was defined in the first letter which stated, in part, that the agreement was to continue until "cancelled by mutual consent."

The second letter expanded the written agreement by the provision that the plaintiff would continue to receive his commission on all reorders from his customers for a period of 30 months. The second letter also stated that "Naturally, we can agree to discontinue the agreement at any time. . . ." The second "item" of the letter of February 4, was designed to "protect" the defendant from a misuse of the advantages afforded to the plaintiff by the first "item," i. e. that he would not rely on commissions on reorders for his income and neglect an aggressive pursuit of further sales. Therefore, it was agreed that the employment would cease automatically if the plaintiff's "shipments" were less than $25,000 in any one year, and that in such an event the plaintiff would not receive his 8% on reorders. Any other construction of this provision would be meaningless as a "protection" to the defendant. Read as a whole, and in consideration of these circumstances, we can only conclude that the second letter did not change the first in regard to the duration of the

employment. In both, the agreement was to be terminated only with "mutual consent."

In addition, the conduct of both parties subsequent to the second letter clearly indicates that they interpreted the contract to be for no definite duration. The letter from the defendant dated March 20, 1964, stated the "association" was terminated. On April 5, 1964, the plaintiff, by letter "acknowledged" receipt of the termination letter, stated that all samples and stationery were destroyed as requested, and included his final expenses for gasoline and a key to the defendant's office. In no way did the plaintiff protest the action of the defendant in its decision to terminate his employment or attempt to affix a different interpretation on their agreement.

The determination of the trial court that, under the circumstances, the agreement did not provide a definite term or duration was correct. It is well settled that an employment contract that does not specify a definite duration is terminable at will by either party. Stein v. Isse Koch & Co., Chicago, Inc., 350 Ill App 171, 176, 112 NE2d 491; White v. American Elec. Fusion Corp., 328 Ill App 128, 65 NE2d 234.

For the reasons given, the decision of the trial court will be affirmed.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.

OPINION ON REHEARING

August 1, 1967.

JUSTICE ABRAHAMSON delivered the opinion on rehearing.

53

■■■■■■■■

Having reconsidered the briefs and having studied the petition for rehearing and the pertinent authorities, we have decided to depart from our opinion.

The second letter, upon reflection, added a condition of termination which was not present in the first letter. The added contingency was that the agreement of the parties as represented by both letters "would be automatically cancelled" if shipments to plaintiff's customers did not total $25,000 in any year. Unless both parties agreed, neither could terminate, absent cause, unless the contingency were met.

■ While both letters provided for termination by mutual consent, the contract would have been for an indefinite duration and thus terminable at will absent the condition added in the second letter. However, the additional provision did amount to the setting of a condition, upon the happening of which, the contract would have been terminated. The contract was not ambiguous in its expression of duration and, therefore, not subject to construction. No sufficient cause was proved for termination, nor was there an agreement to terminate.

In legal effect, the contract specified a definite duration which prevented the defendant from terminating at will. Liberty Industrial Sales, Inc. v. Marshall Steel Co., 272 F2d 605 (CA 7th, 1959); Stein v. Isse Koch & Co., Chicago, Inc., 350 Ill App 171, 112 NE2d 491.

On rehearing, the judgment for the plaintiff in the sum of $5,087.92 is affirmed and the cause is remanded to the trial court for further proceedings in keeping with the views herein expressed.

On rehearing: affirmed in part, reversed in part and remanded.

MORAN and SEIDENFELD, JJ., concur.