(No. 73-CC-0250

GALESBURG CONSTRUCTION COMPANY, INC., Claimant,
v. STATE OF ILLINOIS, Respondent.

*Opinion filed June 14, 1978.*

BARASH & STOERZBACH, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

POCH, J.

This claim arises out of a contract to construct a chapel.

In October, 1970, the State of Illinois advertisied for bids for the construction of All Faiths Chapel at the Illinois Soldiers' and Sailors' Home, Quincy, Illinois. Respondent prepared and distributed to Claimant and other interested contractors various proposals and specifications for the contractors' use in preparing their bids, among the proposals being the following:

"*PROPOSAL NO. 1:* For the complete construction and completion of all General Construction Work for the All Faiths Chapel, Illinois Soldiers' and Sailors' Home, Quincy, Illinois, as shown on the drawings and as specified, exclusive of the work required for the complete construction and

completion of all work shown and called for in the Additive Proposals listed hereinafter.

*PROPOSAL NO. 1A:* In the event that the complete construction and completion of all general construction work as shown on the drawings for the site improvements, division 3000, pages 300, 301, 302 and 303 including removal of top soil and excavation for paving, paragraphs 2010 and 2011, and filling for paved areas, paragraphs 2018, 2019 and 2021, is accepted and authorized and to Proposal No. 1."

In due course Claimant submitted a bid for Proposal No. 1, known as general construction work, and a bid for Proposal No. 1A, known as site improvement work.

As appears on the face of Proposal No. 1A above, the proposal refers specifically to the "drawings for the site improvements", such drawing being blueprint A-1 in the schedule of drawings furnished the bidders. In the Schedule of Drawings, blueprint A-1 bears the legend "Site Plan, Soil Borings, and Drawing Schedule." Proposal No. 1A also refers the bidder to Division 3000 of the specifications, the same being essentially concerned with the specifications for sidewalks.

On December 15, 1970, Respondent notified Claimant that it had accepted Claimant's bid for Proposal No. 1.

Proposal No. 1A for "site work" was not awarded to any contractor.

Respondent's decision not to proceed with Proposal No. 1A was based partly on the fact that costs would have exceeded the appropriation, and partly for the reasons advanced in a recommendation made by the supervising architect before contracts were awarded:

"Another consideration for deleting this alternative is that it includes exterior work, landscaping, *sidewalk*, concrete drives, parking areas and walks which could not normally be completed before late next Spring at the earliest." (emphasis added).

The dispute between the parties arises over whether a five inch concrete sidewalk immediately abutting the building walls on all four sides and under the overhang of the roof was a part of the exterior site plan, for which no contract was let, or was to be considered as a part of the building itself, for the construction of which the contract was let.

This dispute was made possible because of a patent ambiguity appearing on the face of the architect's drawings. Drawing A-1 (Site Plan, Soil Borings, & Drawing Schedule) shows the five inch concrete sidewalk (bearing such legend), four entrance ramps and additional sidewalks, parking areas, concrete drives and landscape work. This drawing is to a scale one inch equals 20 feet. Drawing A-2 (Foundation Plan and Floor Plan) shows the floor plan of the chapel, detailing such interior features as Protestant Chapel, Catholic Chapel, Jewish Chapel, offices, storage facilities, foyer, etc., but also including as part of the building floor plan the five inch sidewalk (bearing such legend) and the four entrance ramps. This drawing is to a scale one-eighth of an inch equals one foot.

Drawing A-5 (Sections and Typical Details) in a Typical Wall Section Thru Facia shows the five inch concrete sidewalk, referring to it as a five inch concrete slab." This drawing is to a scale one inch equals one foot.

The contractor in preparing his bids included this exterior five inch concrete sidewalk in his bid on Proposal No. 1A, and did not include it in his bid on Proposal No. 1.

The problem surfaced at a project coordination meeting held on March 19, 1971. At the meeting Claimant was represented by one Ralph E. Maguire. The

matter appears in the minutes of the meeting as follows:

"Rev. Warford asked what was going to be done about the staining problem on the sidewalks where the Corten steel was above the walks. Mr. Maguire stated that this might be a problem when the walks were installed but that he had included all of the site work including site fill, grading, walks, curbs, drives, etc. in his 1A Alternate which has not been accepted to date.

This started quite a conversation as some present were under the impression that the concrete work around the building was in the contract. The question would seem to hinge on the interpretation of what is to be encompassed by Alternate No. 1A."

The office of the supervising architect was unsure whether the five inch concrete sidewalk was included in the base bid, Proposal No. 1, or in Proposal No. 1A, and requested an interpretation from M. R. Beckstrom, associate architect, who prepared the drawings and specifications.

The architect replied somewhat evasively, by letter of August 24, 1971, to the State's supervising architect, suggesting that negotiations be started for sitework to a point approximately 25 feet beyond the building.

His letter contained numerous self-contradictions and was unacceptable to the State.

Thereafter in a letter to the State supervising architect dated September 21, 1971, the architect stated categorically that the five inch concrete sidewalk, (although external to the building walls), was an integral part of the building slabs.

He stated as follows:

"The interpretation of the word 'sidewalk' on the site plan to describe that portion of the marginal slab around the building seems to be an exercise in semantics to include it with the site work while it is definitely detailed as an integral part of the building slabs."

Nevertheless, neither the architect's evasive interpretation of August 24, 1971, nor his revised interpretation of September 21, 1971, would have been

necessary had it not been for the patent ambiguity in his drawings.

This Court, in line with other Courts of the State of Illinois, has consistently held that where a document is amibiguous, it will be construed against the party who prepared it.

> Orr Construction Co. v. State of Illinois, 30 Ill.Ct.Cl. 266, 276; (1975);
> Madden v. State of Illinois, 27 Ill.Ct.Cl. 118, 124; (1971);
> Chism, Inc. v. State of Illinois; 26 Ill.Ct.Cl. 182, 185; (1967);
> Donahue v. Rockfort Showcase & Fixtures Co., 87 Ill. App. 2d 47, 230 N.E.2d 278, 280 (2d Dist. 1967).

In *Chism supra*, the Court held:
"It is a settled law of construction that a contract which is ambiguous, will be construed most stongly against the party who prepared the contract, as such party is responsible for the ambiguity . . . In this case Respondent was entirely responsible for the preparation of the contrct." *26 Ill.Ct.Cl. 185.*

Various differentiating features appearing in the drawings and specifications influenced Claimant in concluding that the five inch concrete sidewalk was part of the site work. Drawing A5 showed the sidewalk and the floor slab separated by a one-half inch expansion joint on either side of the building walls. In other words, the floor slab and the sidewalk were not contiguous, but were separated from each other by the building walls. The floor inside the building required a six mil. membrane underneath the slab, as a vapor barrier, not required under the sidewalk.

## As Claimant's witness, Fred W. Apsey, testified:

"If you will refer to the drawing you will see that the floor slab inside the building stops at the wall line with a half inch expansion joint between the edge of the floor slab and the inside of the building wall and that underneath the floor slab there is a six mil. membrane and when you go outside the building you will see another half inch expansion joint next to the building and the concrete slab which is the sidewalk and therefore, there is no membrane under it and there are other details like the thickened edge of the sidewalk and certain reinforcing bars and other details."

Rigid perimeter insulation was put continuously around the floor slab on the inside of the building, as

shown on Drawing A5. Less concrete per gallon of water was required for the interior floor slab (not being exposed to the weather) than for the five inch concrete sidewalk.

Finally, the sections of Division 3000 of the specifications referred to in Proposal No. 1A expressly pertain to "concrete sidewalks," the phrase used in drawings A1 and A2.

Claimant was justified in concluding that the exterior five inch concrete sidewalk was to be bid under Proposal 1A and not under Proposal 1.

It is a fair statement that the testimony of the State's employees called by Claimant as witnesses indicated that the plans were ambiguous with respect to the sidewalk.

Wesley H. Pinchot, at the time of the construction, a project administrator for the Supervising Architect, Department of General Services, State of Illinois, testified that after the dispute arose, "I asked for the interpretation of the intent of the contract documents." He testified:

"This information in the specifications and drawings was unclear. This is why I asked the associate architect for a clarification that the supervising architect could make a decision."

The State advances the argument that large scale drawings prevail over small scale drawings in case of dispute, and that large scale drawing A5, where the sidewalk is referred to as a five inch concrete slab," should prevail over small scale drawings A1 and A2 where the sidewalk is referred to as a five inch concrete sidewalk." This argument is of no help to the State because drawing A5 also shows the expansion joints, the floor membrane, the interior insulation, and the reinforcing bars, differentiating the floor slab from the sidewalk.

The State additionally argues that the five inch concrete sidewalk was really "an exterior floor" to be built under the provisions of the 4000 Division of the specifications, and not under the sections of the 3000 Division referred to in Proposal 1A, pertaining to "concrete sidewalks."

The effect of the State's arguments is merely to remind us that the contract documents, for which the State had the total responsibility, were ambiguous on their face.

After the dispute arose the State threatened Claimant that if Claimant did not build the sidewalk the State would have the work done and withhold the cost from Claimant's contract pay.

On or about March 21, 1972, Claimant agreed to construct the sidewalk and the four entrance ramps for $5,965.00, an amount estimated by Respondent, and thereafter performed the work.

Respondent has failed to pay Claimant for this additional work made necessary by Respondent's fault.

Claimant's claim is hereby allowed in the sum of $5,965.00.