(No. 20069.—

JOHN M. WEGER, Plaintiff in Error, *vs.* THE ROBINSON NASH MOTOR COMPANY *et al.*—(CHARLES J. WEGER, Defendant in Error.)

*Opinion filed June 20, 1930.*

PARKER, COX & EAGLETON, for plaintiff in error.

JONES & LOWE, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

This cause is here on *certiorari* to review a judgment of the Appellate Court for the Fourth District, reversing, on the appeal of Charles J. Weger, a decree of the circuit court of Crawford county in a suit for an accounting brought by plaintiff in error, John M. Weger, against defendants, the Robinson Nash Motor Company, Charles J. Weger, the Robinson State Bank and Adlai A. Weger, by which decree Charles J. Weger (hereinafter called defendant in error) was adjudged to pay to John M. Weger the sum of $5536.18 and the latter to pay to the Robinson State Bank

$7671.97, and that plaintiff in error and defendant in error should each pay one-half of the costs of the suit.

The Robinson Nash Motor Company, a corporation, was organized in May, 1924, and at once began business at Robinson. About March 1, 1925, it was found that the motor company did not have sufficient available money to carry on the business as desired, and on March 20, 1925, John M. Weger and Charles J. Weger executed a note to the Robinson State Bank for $3000. The proceeds from this note were placed to the credit of the motor company at said bank. Prior to this time the bank had extended to the motor company a line of credit to the amount of $6000. After this was done the motor company became indebted to the bank considerably in excess of $6000. The business relation between the bank and the motor company became unsatisfactory to the cashier of the bank, and Adlai A. Weger, the manager of the motor company, was so notified. At the same time the cashier of the bank told him that the bank would extend a line of credit to the motor company to the amount of $15,000 if it would give a guaranty signed by the persons connected with the motor company as designated by the cashier of the bank. The suggestion of the cashier was satisfactory, and on August 15, 1925, a written guaranty was signed by plaintiff in error and defendant in error and A. A. Weger and R. R. Weger, who were all directors and stockholders in the motor company, the express consideration of the guaranty being that the bank should extend to the company a line of credit to the extent of $15,000. Pursuant to this arrangement various notes amounting to several thousand dollars were given the bank by the motor company and the amounts placed on the bank's books to the credit of the motor company's account. Subsequently R. R. Weger sold his stock and severed his connection with the company, and for the sole purpose of releasing him from further liability on the guaranty of August 15, 1925, a new contract was executed by plaintiff in error,

defendant in error and A. A. Weger. At this time the company and A. A. Weger were insolvent. The second guaranty contract was as follows:

"We, the undersigned directors and stockholders of the Robinson Nash Motor Company, do hereby guarantee the payment of notes of said company given the Robinson State Bank of Robinson, Illinois, and hereby agree to be personally liable therefor and to all the conditions and requirements written in said notes in consideration of said bank extending to said Robinson Nash Motor Company a credit of fifteen thousand dollars ($15,000), bearing interest at the rate of (6) six per cent per annum, with the privilege of paying off said notes at any time and stopping the interest thereon, made in duplicate this 28th day of October, A. D. 1925.

J. M. WEGER,
CHARLES J. WEGER,
A. A. WEGER."

"Accepted by the Robinson State Bank this 5th day of November, 1925. O. M. DAVIS, *Cashier.*"

At the time of executing the guaranty contract in question the motor company was indebted to the bank between $13,000 and $14,000, evidenced by seven promissory notes. At no time prior to the execution of the first guaranty contract had the motor company's credit been good at the bank but on each occasion when it desired credit it was required to furnish surety on its notes or on its cars. Defendant in error testified that he knew the bank demanded the first guaranty contract, and that he understood that it was in order that the motor company could get credit at the bank without coming to him and the other stockholders; that the second contract was to take up the first, and was made for the purpose of getting R. R. Weger off of the first. After the execution of the second guaranty contract the motor company made some payments on its loans and borrowed sums for which it gave its notes to the bank as follows: December 9, 1925, $950, August 23, 1927, $500, and June 6, 1927, $250, but at no time, so far as shown by the abstract, did the indebtedness of the motor company to the bank aggregate $15,000. On January 13, 1926, there was due on

one of the motor company's notes $832, and a new note was executed by the bank therefor and the original note was marked paid. On March 13, 1926, there was due on six of the motor company's notes given to the bank prior to the execution of the second guaranty contract the sum of $12,797.92. The motor company paid on this amount $97.92 and gave its note for $12,700, payable on demand, in lieu thereof, and the six original notes were respectively marked paid. On January 13, 1927, the $12,700 note was taken up by the motor company, marked paid and a new note given in lieu thereof. This latter note was signed by the motor company, A. A. Weger and J. M. Weger. On the motor company's indebtedness to the bank plaintiff in error made several payments of principal and interest. On November 3, 1927, the bank notified the guarantors that notes of the company aggregating $13,923 and interest were due, that these loans were made in pursuance of the agreement of October 28, 1925, and that they must be paid. Thereafter some payments were made by plaintiff in error, but no payments were at any time made by defendant in error. The latter having refused to make any payments on the amount due to the bank or to make contribution for the amounts paid by plaintiff in error, the latter brought this suit for an accounting and to compel defendant in error to make contribution. Defendant in error answered, denying all liability and claiming that when the old notes were taken up, marked paid and new ones issued in their stead he was then released from all liability thereon.

The court heard all the testimony, both oral and documentary, in open court. On the final hearing the trial court found the equities with plaintiff in error, made specific findings as to the execution and renewal of various notes and the amounts paid thereon by plaintiff in error, and that by signing the note for $12,700 he became liable for the balance due thereon, and that defendant in error and Adlai A. Weger were released from liability thereon to the bank.

The court also found that on October 28, 1925, there was due the bank from the motor company $14,365.91, and that under the guaranty contract plaintiff in error, defendant in error and Adlai A. Weger became jointly and severally personally liable for the payment thereof; that the motor company after the execution of the guaranty contract made payments on the indebtedness to the amount of $3293.54, leaving a balance of $11,072.37, for which amount the plaintiff in error, defendant in error and Adlai A. Weger were personally liable; that the motor company and Adlai A. Weger were both insolvent, and that in equity and good conscience plaintiff in error and defendant in error each should contribute the one-half thereof. The court further found that the guaranty contract was not a continuing guaranty and excluded from its calculation all indebtedness incurred by the motor company for which it gave notes to the bank after October 28, 1925, and the court did not include any interest on the indebtedness owing by the motor company to the bank on the 28th day of October, 1925. The court decreed that defendant in error pay to plaintiff in error $5536.18 and that plaintiff in error pay to the Robinson State Bank $7671.97, both sums to be paid within thirty days, and decreed plaintiff in error and defendant in error each to pay one-half the costs. From this decree defendant in error prosecuted an appeal to the Appellate Court for the Fourth District, and that court entered a decree reversing the decree of the circuit court and adjudged plaintiff in error to pay all costs.

The specific finding in the record of the Appellate Court on which it based its judgment of reversal was that defendant in error did not consent to the renewal of the notes or ratify the same, and that the extension of the time of payment by renewal, in the absence of consent or ratification, discharged defendant in error from liability.

Plaintiff in error in the Appellate Court assigned as cross-error that the trial court erred in holding that the

guaranty contract entered into October 28, 1925, was not a continuing guaranty, erred in holding that it only bound the parties thereto for indebtedness owing by the motor company to the bank on the date of the execution thereof, and erred in not allowing to plaintiff in error interest on the various amounts paid by him and in not requiring defendant in error to contribute for money paid by plaintiff in error on the indebtedness of the motor company to the bank, incurred after the execution of the guaranty contract; that the court erred in not decreeing defendant in error to pay the balance due the Robinson State Bank, and in not decreeing defendant in error to pay to the bank the sum of $7500, the amount due on exhibit No. 14.

The assignments of error in this court on the record of the Appellate Court embody all the cross-errors assigned by plaintiff in error on the record of the Appellate Court, and in addition thereto assign as error the holdings of the Appellate Court that defendant in error did not ratify or consent to the renewal of the several notes.

It is claimed by defendant in error that the agreement was for the guaranty of notes executed prior to the signing of the guaranty, that there was no consideration moving from the payee of the notes to the guarantors, and that therefore the agreement was null and void. That claim is not valid in this case, as the evidence introduced by both parties shows a valuable consideration. Each agreement recites that the guaranty was made "in consideration of said bank extending to said Robinson Nash Motor Company a credit of $15,000." The guaranty was accepted in writing by the bank and it thereby agreed to extend such credit. An additional consideration is shown for the second guaranty in that R. R. Weger was released from liability on the first guaranty and it was surrendered by the bank. While a contract, to be legally binding, must be based on a consideration, any act which is of benefit to one party and of disadvantage to the other constitutes sufficient consideration.

*Schlatter* v. *Triebel,* 284 Ill. 412; *People* v. *Commercial Life Ins. Co.* 247 id. 92; *Burch* v. *Hubbard,* 48 id. 164.

It is claimed by defendant in error that the guaranty was only given to secure the payment of notes of the motor company held by the bank on October 28, 1925, and that when those notes were taken up and marked paid that constituted payment of the notes and released defendant in error from all liability. Where one person is obligated to pay money to another, a payment made in any mode or with any medium satisfactory to the payee, if such payment is received as a satisfaction of the demand by the payee, is equivalent to and will be treated as a payment in cash. (*Crowley* v. *Methodist Book Concern,* 323 Ill. 215; *Ralston* v. *Wood,* 15 id. 159.) The giving of a promissory note does not, of itself, operate as a satisfaction of the original note. Whether it does so or not is a question of fact to be determined from the evidence in the case and depends upon the intention of the parties. After it is made and accepted for such purpose the former note is satisfied. (*Boulter* v. *Joliet Nat. Bank,* 295 Ill. 594.) Where a new note is executed by the debtor to a creditor in settlement of his debt upon an old note to the creditor the presumption arises that the giving of the new note is a payment of the original debt. (*Leake* v. *Brown,* 43 Ill. 372; *Smalley* v. *Edey,* 19 id. 207.) The presumption, however, is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely. (*Coal Creek Drainage District* v. *Sanitary District,* 336 Ill. 11; *Sharp* v. *Sharp,* 333 id. 267; *Brown* v. *Brown,* 329 id. 198; *People* v. *Cochran,* 313 id. 508.) In *Keller* v. *North American Life Ins. Co.* 301 Ill. 198, it is said: "At the outset we find the law reasonably well

settled that a note given by a debtor for a precedent debt will not be held to extinguish the debt in the absence of an agreement to that effect but will be considered as conditional payment or as collateral security or as an acknowledgment or memorandum of the amount ascertained to be due. The doctrine proceeds on the obvious ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. That a mere promise to pay can not of itself be regarded as an effective payment is manifest." In the instant case the evidence shows clearly that it was not the intention of the parties that the giving of the new notes should operate as a payment of the old. It is scarcely within the range of credence that the bank, when it had a good and sufficient guaranty of the payment of the old notes, would have taken the unsecured notes of the motor company in payment of its secured notes when for over a year prior thereto it had refused any credit, without ample security, to the motor company and the motor company was then in an insolvent condition. The evidence elicited by both parties shows that the giving of the new notes was merely a renewal of the old and not payment thereof. A contract guaranteeing the payment of a note is an absolute contract, and by it the guarantor undertakes for a valuable consideration to pay the debt at maturity if the principal debtor fails to do so, and upon it, if the debt is not paid at maturity, the guarantor may be sued at once. Guarantors must be regarded as original promisors, who bound themselves to pay the notes when they matured, and their duty was, on their maturity, to go to the holder and take them up, and their liability was not to depend upon the prosecution of suit against the maker. (*Beebe* v. *Kirkpatrick*, 321 Ill. 612; *Holm* v. *Jamieson*, 173 id. 295; *Gage* v. *Mechanics' Nat. Bank*, 79 id. 62; *Newlan* v. *Harrington*, 24 id. 207.) The contention that the renewal of the notes without the assent of defendant in error discharged

him from liability cannot be sustained. The renewal of a debt for which a guaranty paper has been deposited as collateral security does not release the liability of the guarantor. (*Elgin Nat. Bank* v. *Goecke,* 295 Ill. 403; *Fairbank* v. *Merchants' Nat. Bank,* 132 id. 120.) Defendant in error's liability to pay the debt secured by the notes did not depend upon notice to him or his assent to the extension. His liability to pay the debt secured by the notes was fixed absolutely upon the signing of the guaranty contract.

The only remaining question is whether or not the guaranty was a continuing one and covered notes given by the motor company to the bank after the signing of the contract. In the construction of contracts for the purpose of ascertaining the intention of the parties the court will endeavor, by extrinsic evidence of such facts as the parties had in view, to place itself as nearly as possible in their position, so that it may understand the language used in the sense intended by them. (*Doyle* v. *Teas,* 4 Scam. 202; *Barrett* v. *Stow,* 15 Ill. 423; *Sigsworth* v. *McIntyre,* 18 id. 126.) In seeking to ascertain the intention, regard will also be had to the practical construction, if any, which the parties by their acts have given the contract. (*Whalen* v. *Stephens,* 193 Ill. 121.) So, also, the acts of the parties themselves indicative of their construction placed upon it may be resorted to for the purpose of determining the true meaning of the written agreement, and in this regard it makes no difference whether such acts are contemporaneous or subsequent. Moreover, where the contract is, in fact, understood by one of the parties in a certain sense and the other party knows that he so understands it then the undertaking is to be taken in that sense, provided this can be done without making a new contract for the parties. (*Street* v. *Chicago Wharfing Co.* 157 Ill. 605; *Wells* v. *Carpenter,* 65 id. 447.) Courts of equity look to the circumstances rather than to the form of written instruments and will seek to discover and carry into effect the real intention of the

parties, and will enforce a contract according to the sense in which it was understood by the parties, as shown by their subsequent acts and conduct with reference thereto. (*Smurr* v. *Kamen*, 301 Ill. 179; *Ogden* v. *Stevens*, 241 id. 556.) A continuing guaranty is one intended to cover transactions over an extended time. Where by the terms of the written guaranty it appears that the parties look to a future course of dealings or a succession of credits it is generally considered a continuing guaranty. *Scovill Manf. Co.* v. *Cassidy*, 275 Ill. 462.

It is claimed by defendant in error the contract was not a continuing one for the reason the notes the payment of which was guaranteed were described as notes "given," which is the past participle of the verb "give," and that such past participle must necessarily refer to past time. To give it this sense would necessitate the insertion of the words "which have been" before the word "given," as if it had been written "which have been given." The participle "given," however, is used in a different sense, and refers to the future when used in the sense of "may be given" or "shall be given," as used in the passive form of the conjugation of the verb "give."

In construing a contract it is our duty, if possible, to give effect to each clause, phrase and word used therein, and we must presume that the contracting parties meant something by the use of the particular language used by them. To adopt defendant in error's construction of the contract would render meaningless the words, "in consideration of said bank extending to said Robinson Nash Motor Company a credit of fifteen thousand dollars ($15,000), bearing interest at the rate of (6) six per cent per annum, with the privilege of paying off said notes at any time and stopping the interest thereon." If the guaranty had reference only to notes in existence at the time of its execution then there was to be no extension of credit and we must reject the consideration of the extension of the $15,000 credit, for the

notes then in existence amounted to much less than $15,000. We must reject the words "bearing interest" at "(6) six per cent per annum," as many of the notes then in existence bore seven per cent interest, and we must likewise reject as meaningless the provision granting the privilege of paying off the notes at any time and stopping the interest, as the guarantors already had that privilege as to all the six per cent notes. It is evident from the situation of the parties, the reason for giving to the guaranty the construction placed by the parties thereon by their course of action with reference thereto, the language used therein, and the evident intention of the parties deduced from a reading of the contract in the light of all the circumstances surrounding its execution, that by the language used in the guaranty the parties intended to include therein not only the notes then in existence but also such other notes as should be thereafter given in order to extend a credit of $15,000 to the motor company, that all subsequent notes should bear six per cent interest instead of seven per cent, as theretofore borne by some, and that the guarantors should have the privilege of paying off the new notes at any time.

At the time of the commencement of the suit there was only one note of the motor company outstanding in the hands of the bank, which was the note previously referred to as exhibit 14. This was a note for $12,700 given by the motor company, plaintiff in error and A. A. Weger to the bank January 13, 1927, at which time a note of $12,000, dated March 13, 1926, given in renewal for six notes covered by the guaranty, was taken up and marked paid. At this time the bank demanded additional security for the new note, and this was given by plaintiff in error and A. A. Weger signing it and plaintiff in error putting up as collateral two notes, one for $2500 and the other for $1000. This transaction differs from the other extensions, and when new security was demanded by the bank and

given by plaintiff in error and the old note marked paid and surrendered, this constituted payment of the original note by plaintiff in error, as both the motor company and A. A. Weger were insolvent. This payment was a payment of the liability of plaintiff in error and defendant in error, under the guaranty, to pay the note of March 13, 1926, and their liability as signers of the guaranty contract was reduced by the amount of such payment.

"Where there are sureties for the same principal debtor and for the same debt or obligation and one or some of them have paid or satisfied more than his or their proportionate share of the debt or obligation, he or they are entitled to contribution from the other sureties in order to equalize the common burden. * * * The contract implied by law when one becomes a surety is that he engages to contribute his proportion according to the number of sureties, without reference to the solvency or insolvency of either of his co-sureties, but a court of equity, applying the fundamental rule that equality is equity, will apportion the loss among the solvent sureties." (*Trego* v. *Estate of Cunningham,* 267 Ill. 367.) The ground of relief does not stand upon any notion of mutual contract, express or implied, by the sureties to indemnify each other in proportion, but it arises upon principles of equity, independent of contract. (*Conover* v. *Hill,* 76 Ill. 342.) The payment for which contribution is allowed may have been effected either by a cash payment or some other way, as by a new note with additional security, and it is not necessary that the payment should have been made under actual compulsion or that the party making the payment should actually have been sued. (2 Pomeroy's Eq. Rem. sec. 917.) It would be a harsh rule for a court of equity to enforce, to require parties who have already paid more than their just proportion of a debt to pay all the residue before they could have an accounting and contribution, and it may frequently be they are unable to discharge such residue and the obligation

resting upon them unless they first or concurrently get relief against the other joint guarantors.

Plaintiff in error was entitled to an accounting and contribution from defendant in error and a decree therefor for one-half of the principal and interest paid by him to the bank on the notes of the motor company, including the payment made by him by note of $12,700 January, 1927, but not interest paid by him on that note after January 13, 1927.

The judgment of the Appellate Court and the decree of the circuit court of Crawford county are reversed and the cause is remanded to the circuit court, with directions to re-state the account and enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*