*1012 OPINION.
Aenold :
Petitioner contends that the application for a loan executed February 25,1936, constituted a written agreement or contract, which prohibited the payment of dividends during the year 1936, and therefore it is entitled to the credit provided under the provisions of section 26 (c) (1) of the Kevenue Act of 1936.
Respondent contends that petitioner entered into a new agreement or contract with the bank on September 2, 1936, regarding the payment of dividends, which was in substitution for that entered into on February 25, 1936, and that the agreement or contract of September 2, 1936, fails to meet the requirements of the statute. He further contends that in any event the agreement or contract entered into on February 25, 1936, was subject to modification by mutual consent and it is, therefore, not one which falls within the terms of section 26 (c) (1) of said act.
Section 26 (c) (1) of the Revenue Act of 1936, so far as applicable, is as follows:
SEC. 26. CREDITS OE CORPORATIONS.
In the case of a corporation tlie following credits shall be allowed to the extent provided in the various sections imposing tax—
* * * * * sis *
(c) Contracts Restricting Payment oe Dividends.—
(1) Prohibition on payment oe dividends. — An. amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *
The terms and conditions of the instrument of February 25, 1936, were binding on petitioner until its obligation to the bank was satisfied, unless it was abrogated or supplemented by the September 2, 1936, agreement to the extent it was rendered ineffective as an agreement or contract prohibiting or restricting the payment of dividends during the taxable year.
*1013 The letter or contract of September 2,1936, refers in express terms to the renewal of the company’s note for $30,000, balance due on the original obligation, and expresses the desire to extend the agreement made February 25, 1936. As the terms and conditions of that instrument were binding on petitioner until all the obligations to the bank were discharged, no extension or renewal was necessary. The obligation to the bank was not discharged until 1938.- While the letter or contract of September 2, 1936, modified the agreement of February 25,1936, by the removal of the prohibition or restriction against the payment of preferred dividends, in all other respects it was a confirmation of that agreement and did not otherwise abrogate or supplant its terms and conditions. The giving of the note of September 2, 1936, can not be considered as the discharge of the existing obligation and the creation of a Pew obligation, in the absence of evidence that it was so intended. Schlemmer v. United States, 94 Fed. (2d) 77; Chapman et al. v. Critchet, 95 S. W. (2d) 360; Weger v. Robinson Nash Motor Co., 340 Ill. 81; 172 N. E. 7. The evidence is to the contrary. The change in form of the September 2, 1936, note is immaterial. That form was used for the reason the bank no longer cared for the participation of the Federal Reserve Bank in the loan. All arrangements were made and transactions had with the bank. The application for the loan was directed to the bank, the original note and renewals were payable to the bank, and the money was furnished by the bank. Participation in the loan by the Federal Reserve Bank was a matter between the bank and the Federal Reserve Bank, with which petitioner was not concerned.
Petitioner produced two executives of the bank who were personally familiar with the circumstances under which the loan was made. Each of them testified in detail about the circumstances under which the bank made the loan, and that the bank preferred short term maturities because of the adverse feeling of commercial banks generally for long term obligations, and because, in case of a breach of any of the conditions under which the loan was made, a short term note afforded the bank an opportunity to demand payment. Both executives testified that the bank contemplated a loan for the purpose of providing, the petitioner with working capital for a period of years, and that the conditions, including restriction on the payment of dividends and other restrictions, would continue throughout the term of the loan. Each testified that the bank emphasized these restrictions in the various conferences held with officials of the petitioner, and we find their testimony very persuasive.
As to the respondent’s contention that, since the agreement of February 25, 1936, was subject to modification by mutual consent, it is not one which falls within the terms of section 26 (c) (1) of the act, it may be said that, if this were so, no contract could be *1014 effective to prohibit or restrict the payment of dividends, as the right to modify by mutual agreement is inherent in all contracts. The bank’s consent to the removal of the restriction, -whereby for a relatively small amount of cash a large amount of accumulated dividends could be discharged, enhanced the bank’s prospects of collection. For this reason the bank consented to the removal of the restriction to the extent provided by the letter of September 2, 1936. The removal of the restriction went no further than to permit settlement of accumulated dividends on preferred stock and payment of subsequent preferred dividends at a lower rate. Beyond this petitioner was restricted by the agreement of February 25, 1936. It can not be assumed that the bank would consent to any further modification and permit' earnings to be distributed to common stockholders so long as petitioher was indebted to it. As petitioner was prohibited or restricted from payment of dividends by written contract executed prior to May 1, 1936, it follows that it is entitled to credit under section 26 (c) (1) of the Revenue Act of 1936.
Reviewed by the Board.

Decision will be entered under Ride 50.