Sara L. Greene, Edward D. Greene, and Sara L. Greene, Executor of the Estate of Harold M. Greene, Deceased, Plaintiffs-Appellants, v. Elmer Gust, Christie Gust, and Greene and Gust Company, an Illinois Corporation, Defendants-Appellees.

Gen. No. 47,902.

First District, Second Division.

May 3, 1960.

Fischel, Kahn, Heart and Weinberg, of Chicago (Jay L. Olschan and Gerald A. Gitles, of counsel) for appellants.

Kirkland, Ellis, Hodson, Chaffetz, and Masters, of Chicago (Wayne F. Swonk and William R. Theiss, of counsel) for defendants-appellees Elmer Gust and Greene and Gust Company, an Illinois Corporation.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

In Count I of a two count complaint, plaintiffs seek a declaration of their rights under a corporate life insurance stock transfer plan. The court sustained defendants' motion to strike the count, and dismissed the declaratory judgment action. The trial judge found there was no just reason for delay, and plaintiffs have appealed.

The question before us is whether the declaratory judgment count states a cause of action sufficient to bring it within the provisions of section 57.1 of the Civil Practice Act. [Ill Rev Stats 1959, c 110, § 57.1] The motion to dismiss admits the well-pleaded facts in the complaint. Bush v. Babb, 23 Ill.App.2d 285, 162 N.E.2d 594.

In April, 1950, the total issue of 600 shares of stock of Greene and Gust Co., the corporate defendant, was owned by two principals, Harold M. Greene and Elmer Gust, the "key men," and members of their families. The Greenes held 240 shares, and the Gusts 360 shares.

The corporations purchased a $50,000 life insurance policy on each of the two "key men," with the benefits payable to the corporation. On April 10, 1950, a resolution was adopted at a joint meeting of the directors and stockholders, intended to be an agreement and plan for the utilization of the proceeds of the policies in the event of the death of either of the two "key men." The proceedings of the meeting and the resolution were reduced to writing as corporate minutes, and were then signed by the president, secretary, and by shareholders present, representing a total of 556 shares.

The plan was designed to provide $50,000 at the death of either of the "key men," to the corporation

4

for use in purchasing stock from the heirs of the deceased "key man." The purpose was to keep the respective family shareholdings equal and within the two families, or to permit the heirs of the deceased "key man" to elect to sell to the corporation "any portion of their stock up to and including $50,000." The minutes fail to indicate how many shares are to be sold or at what price.

On September 11, 1954, Harold M. Greene died, and his widow, Sara Greene, was appointed executrix of his estate. At the time of his death, he and his family held 240 shares. On November 1, 1954, the corporate defendant received $50,000 as the proceeds of the Harold M. Greene life insurance policy. On November 10, 1954, plaintiffs, the Greene family, through a letter of their attorneys, addressed to the defendants, the Gusts and the corporation, "confirmed" plaintiffs' desire to exercise their rights under the agreement and corporate resolution.

The defendants did not reply to the letter of November 10, 1954, but some months later sent the Greenes a copy of minutes of a special meeting of the board of directors, held on June 21, 1955. Apparently none of the Greene family was present. These minutes rescind "the action of the directors" on April 10, 1950, after reciting that the meeting of April 10, 1950, did not take place, and that minutes of a meeting of December 3, 1949, were missing from the minute book, which minutes "were supposed to relate to a corporate agreement relative to the use of insurance on the lives" of the two "key men."

▇▇▇ The complaint in an action for declaratory relief, which recites in detail the legal dispute between the parties and prays for a declaration of rights and other legal relations of the parties, states facts sufficient to constitute a cause of action, when chal-

lenged by a motion to dismiss for insufficiency of the complaint. (Anderson, Actions for Declaratory Judgments, Vol. 1, §§ 313, 324, 334; Burgard v. Mascoutah Lumber Co., 6 Ill.App.2d 210, 127 N.E.2d 464.) Construction of a contract is a proper type of action under the Declaratory Judgments Act, even though plaintiff requests, and the court grants, money damages or other incidental relief. (Crerar Clinch Coal Co. v. Board of Education, 13 Ill.App.2d 208, 218, 141 N.E.2d 393.) The fact that a plaintiff is not entitled to the precise relief sought, or because the court disagrees with plaintiff's construction of the contract involved, is not sufficient to dismiss a declaratory complaint. Unless it appears to a certainty that the plaintiff is entitled to no relief on the provable stated facts, the complaint must be sustained. Central Ice Cream Co. v. Universal Leaseway System, 20 Ill.App.2d 145, 155 N.E.2d 324.

The Gusts' principal contention is that no contract existed between the parties, and that the April 10, 1950, resolution was meaningless and abortive, and resulted in no loss or prejudice to plaintiffs. We believe the disposition of this contention is sufficient for our decision.

This contention would permit the corporate defendant to receive all of the benefits from the insurance plan and deny the Greenes any rights, if, in reducing the agreement to writing, the shareholders failed to state the agreement in full or used words or terms which made the plan ambiguous or uncertain.

The terms of a contract or agreement must, if possible, be construed to mean something rather than nothing at all. If a contract in writing is so ambiguous or obscure in its terms that the contractual intentions of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject matter of the contract, of the relation-

6

ship of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract, may be received to enable the court to make a proper interpretation of the instrument. Under this rule, where the contract is of doubtful meaning, general and established custom may sometimes be resorted to for the purpose of ascertaining its true meaning. 12 I.L.P., Contracts, § 244, p. 429; Schneider v. Neubert, 308 Ill. 40, 43 (1923) 139 N. E. 84; Weger v. Robinson Nash Motor Co., 340 Ill. 81, 91 (1930), 172 N. E. 7.

The complaint sets forth verbatim the minutes of April 10, 1950; the letter of November 10, 1954; and the minutes of June 21, 1955.

Applying the foregoing rules to the minutes of April 10, 1950, we believe they sufficiently show that the shareholders and directors present at the meeting did enter into an agreement providing for the use of the insurance benefits by the corporation, in purchasing shareholders' stock, and gave to the family of the deceased "key man" the right to elect as to how the insurance benefits were to be so used. However, the minutes are ambiguous and require resort to evidence of extrinsic facts and circumstances to determine the true intent and agreement of the parties.

■ Where it appears that portions of an entire agreement are not contained in the writing, it is permissible to supply those things which were omitted, if the part omitted is not inconsistent with the writing and is independent of, and in addition to, it. (12 Am. Jur. § 235.) In the instant case, this would require evidence as to what took place between the parties at or before the corporate meeting of April 10, 1950, in order that the court might construe the "key men" insurance agreement in the light of the circumstances surrounding the parties and the objects which they evidently had in view. Torrence v. Shedd, 156 Ill. 194,

7

202, 41 N. E. 95; Weger v. Robinson Nash Motor Co., 340 Ill. 81, 91, 172 N. E. 7.

This same rule should be applied to the minutes of the June 21, 1955, meeting, if it develops that this meeting has any significance in the instant situation.

Defendants also contend that plaintiffs' November 10, 1954, letter of election was nothing more than a counterproposal, which contained new and additional provisions. We do not agree. It is couched within the terms of the April 10; 1950, resolution and should be interpreted in the light of all the circumstances preliminary to its writing.

We have examined in detail the other points and authorities submitted by both sides and have come to the conclusion that, at this posture of the case, we should dispose of no other contentions.

█ Plaintiffs' complaint presents an actual and substantial controversy, in which there are interested parties asserting adverse claims upon a state of facts appropriate for judicial determination. We believe the court erred in striking Count I and dismissing the declaratory judgment action, without giving the parties an opportunity to introduce evidence in aid of the interpretation of the corporate minutes of April 10, 1950, and June 21, 1955, and of plaintiffs' letter of November 10, 1954.

Accordingly, the order of the trial court striking Count I and dismissing the declaratory judgment action is reversed and the cause remanded for proceedings in accordance with the views expressed herein.

Reversed and remanded with directions.

KILEY and BURMAN, JJ., concur.