CONTINENTAL NATIONAL BANK OF FORT WORTH, Trustee, *et al.*, Plaintiffs-Appellees, *v.* STANLEY J. SCHILLER *et al.*, Defendants-Appellants.

Third District    No. 80-86

Opinion filed October 15, 1980.

Dorothea O'Dean and Stewart R. Winstein, both of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellants.

Frank Coyle, of Coyle, Gilman & Stengel, of Rock Island, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendants Stanley and Jay Schiller appeal from a judgment of the circuit court of Rock Island County in favor of plaintiffs, the Continental National Bank of Fort Worth, Texas, as trustee of the Carol Cagle Trust, and Whitfield Collins, trustee of the Christine Cagle Trust, in the amount of $27,273.01 representing the principal, interest, and plaintiffs' attorneys'

fees due and owing pursuant to the terms of a promissory note executed by Stanley Schiller and guaranteed by Jay Schiller. On appeal, two issues are raised for this court's consideration: First, did the plaintiff payees, by a continued course of conduct, waive strict compliance by the defendant maker with the terms on the face of the note regarding installment payments, and, second, was the promise of defendant Jay Schiller to guarantee the note given in return for consideration. Our response to these issues is in the negative and affirmative, respectively, and accordingly we affirm the judgment of the circuit court.

On October 1, 1976, Stanley Schiller executed a promissory note in the amount of $24,322.33, with interest of 6% per annum, with the plaintiffs in this cause designated as payees thereon. This note was a renewal of a note executed only by Stanley Schiller five years previously and on which payment had been postponed by mutual agreement. The renewal note was payable in 105 installments of $300 per month. On its face the note recited that "[i]t is understood and agreed that the failure to pay this note, or any installment as above promised, or any interest hereon, when due, shall at the election of the holder of said note mature the full amount of said note, and it shall at once become due and payable." The note also recited that if it was turned over to an attorney for collection, an additional 10% on the principal and interest then due was to be paid by the maker as attorney's fees. As a condition precedent to the making of this renewal note the payees required that the note be guaranteed. Accordingly, Stanley Schiller's brother, Jay Schiller, signed the reverse of the note as guarantor. There is no indication in the record that Jay Schiller guaranteed the note on any day other than October 1, 1976, the date the renewal note was executed by Stanley Schiller.

From the time of the note's execution until October 1977, Stanley Schiller made regular monthly payments on the note. Although Stanley did not make timely payments in October or November of 1977, in a letter to the plaintiff bank dated December 12, 1977, he enclosed $900 to meet the payments for the last three months of that year. No other installments, however, were forthcoming. As a result, Mrs. Tommie McQuerry, an assistant trust officer of the plaintiff bank, wrote a letter to Stanley in May of 1978. Mrs. McQuerry informed Stanley that he was $1500 in arrears and that prompt note payments were required. The letter then went on to state, "[p]lease remit all or at least a reasonable partial payment of the total amount due immediately." In response, Stanley requested, by letter to Mrs. McQuerry on June 7, 1978, that 1978 payments "be waived, interest charged, and payments resumed January, 1979." On June 27, 1978, attorneys for the plaintiffs informed Stanley that the payees of the promissory note were maturing it, and that suit to recover the balance due on the note, with interest, would be commenced shortly.

Subsequently, Stanley sent checks in the amount of $900 and $1200 to the plaintiffs' counsel, but due to the plaintiffs' decision to mature the note the checks were returned. Following a bench trial held on November 6, 1979, judgment was entered for plaintiffs against both Stanley Schiller and his guarantor, Jay Schiller, on the note in the amount of $27,273.01, such amount representing $21,742.07 principal plus $3,051.58 in interest and $2,479.36 in attorney's fees.

■■ The first contention of the defendants on appeal from the judgment of the circuit court is that by their conduct over a number of years the plaintiffs have waived strict performance of the requirements set forth on the face of the contract, *i.e.*, the note, and consequently they are estopped from accelerating the note because of the failure of the maker, Stanley Schiller, to make timely payments. Although the defendants cite several cases standing for the proposition that strict performance of a contract may be waived by a course of conduct leading one party to the contract to believe such rigid adherence to the terms of the contract will not be required (*Chicago Sugar Co. v. American Sugar Refining Co.* (7th Cir. 1949), 176 F.2d 1, *cert. denied* (1950), 388 U.S. 948, 94 L. Ed. 584, 70 S. Ct. 486; *Craft v. Calmeyer* (1934), 274 Ill. App. 296; *Hibernian Banking Association v. Bell & Zoller Coal Co.* (1913), 181 Ill. App. 581), none of these cases have any application to the instant case. There has been no course of conduct on the part of the plaintiffs that is in any way suggestive of a waiver of strict performance of the terms of the renewal note. Following the making of the note in October of 1976, there was no indication that the plaintiffs were waiving the installment requirements. Indeed, after the maker had become five months in arrears in installment payments, he was notified by the plaintiff bank to remit immediately all, or part of, the balance due. If anything, this correspondence reveals quite clearly the plaintiffs' intention to require Stanley Schiller's adherence to the note's terms. His failure to continue making timely installment payments after December 1977, and his suggestion instead to postpone payment until 1979 resulted in plaintiffs' maturing of the note, an option which was available to them by the terms of the note.

■■ The defendants make much of the fact that this note was a renewal of a note signed by Stanley some five years earlier on which payments were postponed by mutual agreement. We do not believe, however, that the agreement between Stanley and the plaintiffs to postpone payment on this prior note is indicative of a waiver by the plaintiffs of strict performance of the terms of the renewal note. The decision of the plaintiffs to postpone payment pertains only to the original note, not the renewal note which is at the center of this controversy. We find there was never any agreement, express or implied, that Stanley Schiller's payments on the renewal note could be other than timely. All of the actions taken by

the plaintiffs support this conclusion. Relatively prompt request was made by the plaintiffs of Stanley Schiller to remit the amount in arrears (this by way of Mrs. McQuerry's letter of May 1978) and his request that payment for 1978 be waived was rejected. The defendants attempt to emphasize the plaintiffs' conduct prior to the execution of the renewal note is not well taken. What is of concern here is whether the plaintiffs, by their conduct, waived strict adherence to the terms of the renewal note. Therefore, it is their conduct subsequent to the execution of the renewal note, and not prior thereto, that is to be examined. Our reading of the record disclosed that the plaintiffs did not waive timely installment payments. We therefore reject the defendants' contention to the contrary.

■■ The second issue raised in this case concerns the consideration given for Jay Schiller's promise to guarantee his brother's promissory note. The defendants contend that no consideration was given for Jay Schiller's promise to guaranty, and as a consequence his promise is unenforceable. The applicable law governing the sufficiency of consideration for a promise to guarantee payment of a promissory note is succinctly stated in *First National Bank v. Chapman* (1977), 51 Ill. App. 3d 738, 740, 366 N.E.2d 937, 940:

> "The Illinois cases have followed [the] rule, * * * that where the agreement of guaranty is executed contemporaneously with the original note or obligation, the consideration for the note or obligation furnishes sufficient consideration for the agreement of guaranty (*Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 172 N.E. 7; *Munson v. Adams*, 89 Ill. 450), and that where a debt is incurred and thereafter a third party promises to pay or guarantee it, some additional consideration is necessary to support such promise. *Klein v. Currier*, 14 Ill. 237; *Anderson v. Norvill*, 10 Ill. App. 240; *Haven v. Chicago Sash, D. & B. Co.*, 96 Ill. App. 92; *Bassett v. Heiens*, 307 Ill. App. 426, 30 N.E.2d 528."

(Accord, 38 Am. Jur. 2d *Guaranty* §44, at 1047 (1968) ("If the promise of the guarantor is shown to have been given as part of a transaction or arrangement which created the guaranteed debt or obligation, it is not essential to a recovery on the promise of guaranty that the promise shall have been supported by consideration other than that of the principal debt—that is, one and the same consideration may suffice for both contracts where the contract of guaranty has been entered into at the time of creation of the principal obligation."))

■■ In the instant case, it appears from the record that Jay Schiller's guaranty of his brother's renewal promissory note was executed contemporaneously with the creation of his brother's obligation thereon, and in exchange for the plaintiffs' promise to renew Stanley Schiller's earlier note. Accordingly, no additional consideration need be given for Jay

Schiller's promise to guaranty under the authorities previously cited. The defendants, however, argue that because Jay Schiller's guaranty was a guaranty of a renewal note, in effect he was guaranteeing a pre-existing debt, and additional consideration must be given in order to bind him to his promise. The defendants' contention is without merit. Jay Schiller's promise to guarantee his brother's obligation was given as part of the transaction by which the guaranteed debt was created. The plaintiffs' renewal of the note and the surrender of the existing note for the new one constituted sufficient consideration to bind the guarantor of the renewal note. *First National Bank v. Redford Chevrolet Co.* (1935), 270 Mich. 116, 258 N.W. 221.

For the reasons we have stated, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

SCOTT and STOUDER, JJ., concur.