**CIRCUIT COURT OF THE CITY OF WINCHESTER**

Dominion Bank, N.A.

v.

Westside Station, Inc., et al.

August 13, 1992

Case No. (Law) 91–283

By Judge John E. Wetsel, Jr.

This case came before the Court on August 12, 1992, for trial. Present were the Plaintiff, Dominion Bank, N.A., by its counsel, Davis S. Musgrave and Anne-Therese Bechamps; and Mark Rollinson, Esq., appeared for the defendants, Westside Station, Inc., Sorrel Court, Inc., Parnell J. Porter, Barbara B. Porter, Benjamin Weiner, and Frances Weiner.

This is an action by the Plaintiff bank to collect a commercial note, which by its express terms is now due, and the Defendants claim that the term of the note has been extended by the prior course of dealing of the parties.

Before the trial began, the Plaintiff nonsuited its claim against the Defendants Foster, and the Counterclaimants nonsuited their counterclaim against the Plaintiff. The Plaintiff also filed and argued a Motion in Limine to exclude any evidence of any alleged course of dealing between Dominion Bank of Northern Virginia, N.A., and Messrs. Porter and Weiner on the ground that the loan in question in this case was made by Dominion Bank of Shenandoah Valley, N.A., a separate corporate entity, which motion was granted over the objection of the Defendants.

Plaintiff's Exhibits 1–47 and Defendant's Exhibit A were introduced into evidence.

Whereupon evidence was heard *ore tenus* and argued by counsel. Upon consideration whereof and the memorandum of law previously filed in this cause, the Court makes the following [findings and rulings].

## I. *Findings of Fact*

Westside Station, Inc., is a Virginia corporation. Its president is Benjamin Weiner. Its sole shareholders are Benjamin Weiner, Parnell J. Porter, and Steven Foster. Parnell Porter is an attorney who has been extensively involved in real estate transactions. Benjamin Weiner is a professional mortgage banker and a licensed real estate salesman in the Commonwealth of Virginia. Both Porter and Weiner are well educated and financially sophisticated.

On February 19, 1988, Westside Station executed a Commercial Note dated February 19, 1988, in the principal amount of $2,400,000 (the "Original Note") in favor of Dominion Bank of Shenandoah Valley, National Association ("Dominion Shenandoah"), pursuant to which Dominion Shenandoah advanced funds to Westside Station for the acquisition and development of 47 residential lots and seven commercial lots in Winchester and Frederick County on U. S. Route 50 across from the Winchester Medical Center (the "Property").

The acquisition and development loan evidenced by the Original Note was the first and only loan that Dominion Shenandoah made to Westside Station.

Payment of the Original Note was secured by a Credit Line Deed of Trust dated February 19, 1988, on the Property, recorded among the land records of the City of Winchester in Deed Book 221 at page 819, and among the land records of Frederick county in Deed Book 672 at page 211 (the "Deed of Trust").

On February 10, 1988, Parnell J. Porter and Barbara B. Porter executed an Unconditional Continuing Guaranty dated February 10, 1988, in favor of Dominion Shenandoah (the "Porter Guaranty").

Under the Porter Guaranty, Parnell J. Porter and Barbara B. Porter:

> unconditionally guarantee[d] and [became] surety for the full and prompt payment to [Dominion Shenandoah] at maturity, whether by acceleration or otherwise, and at all times thereafter of all indebtedness, obligations and liabilities of every kind and nature of [Westside Station] to [Dominion

Shenandoah], whether now existing or *hereafter created or arising*, direct or indirect, matured or unmatured, and whether absolute or contingent, joint or several, or joint and several, and howsoever owned, held or acquired. [Emphasis added.]

On February 10, 1988, Benjamin Weiner and Frances Weiner executed an Unconditional Continuing Guaranty dated February 10, 1988, in favor of Dominion Shenandoah (the "Weiner Guaranty").

Under the Weiner Guaranty, Benjamin Weiner and Frances Weiner:

unconditionally guarantee[d] and [became] surety for the full and prompt payment to [Dominion Shenandoah] at maturity, whether by acceleration or otherwise, and at all times thereafter of all indebtedness, obligations and liabilities of every kind and nature of [Westside Station] to [Dominion Shenandoah], whether now existing or *hereafter created or arising*, direct or indirect, matured or unmatured, and whether absolute or contingent, joint or several, or joint and several, and howsoever owned, held or acquired. [Emphasis added].

The Original Note stated a maturity date of August 19, 1989.

The Original Note also stated that "[p]rovided this note is not in default at maturity, Maker may extend the term for an additional six (6) months, subject to payment of a ½% fee on the then remaining balance of the outstanding balance due of said Note."

The Original Note further provided that "[u]pon payment of all prepaid or accrued interest at or after the original or any subsequent maturity, Bank may at its option renew this note for a period of time not to exceed that of the original note."

Under the terms of the Original Note, Westside Station also agreed "that extension or extensions of the time of payment of this obligation or any installment or part thereof may be made before, at or after maturity by agreement by the Bank with any one or more of the Parties hereto without notice to and without releasing the liability of any other Party."

The Original Note was not paid on August 19, 1989.

Westside Station exercised the option to extend the maturity of the Original Note to February 19, 1990. Westside Station did not execute a new note to reflect this extension.

The Original Note was not paid on February 19, 1990.

Westside Station requested, and Dominion Shenandoah agreed to, an additional extension of the maturity of the Original Note to January 1, 1991. Westside Station did not execute a new note to reflect this extension.

Dominion Bank of Shenandoah Valley, N.A., at all times relevant hereto, was a separate and distinct corporation from Dominion Bank of Northern Virginia, N.A. Although the two banks were both subsidiaries of Dominion Bank, N.A., they had separate charters and separate and distinct officers, boards of directors, and loan committees, and they operated in different geographical areas. Prior to the loans in question, none of the Defendants had ever dealt with Dominion Bank of Shenandoah Valley, N.A., or any of its officers.

During 1989 and 1990, Westside Station paid interest regularly and reduced the principal balance under the Original Note by the sale of twenty-two residential lots and one commercial lot.

In December, 1990, another six-month extension of the Original Note was agreed to.

On or about January 1, 1991, Westside Station executed a second Commercial Note dated January 1, 1991 (the "Renewal Note") in the principal amount of $1,262,129 in favor of Dominion Shenandoah. Plaintiff's Exhibit 2.

The Renewal Note states that it matures on July 1, 1991.

The Renewal Note provides that "[u]pon payment of all prepaid or accrued interest at or after the original or any subsequent maturity, Lender may at its option renew this note for a period of time not to exceed that of the original note . . ." which was six months.

Under the terms of the Renewal Note, Westside Station also agreed "that extension or extensions of the time of payment of this obligation or any installment or part thereof may be made before, at or after maturity by agreement by the Lender with any one or more of the Parties hereto without notice to and without releasing the liability of any other Party."

Westside Station made its last interest payment under the Original Note, as renewed by the Renewal Note, on May 29, 1991, which paid the interest on the loan through April 20, 1991.

Westside Station did not pay the balance due under the Original Note, as renewed by the Renewal Note, on July 1, 1991.

On July 1, 1991, in addition to Westside Station's failure to pay the entire amount owed under the Original Note, as renewed, at the

stated maturity date, there were the following defaults under the Original Note and the Renewal Note:

a. Westside Station had not made monthly interest payments to Dominion as required under the Original Note, as renewed, since May 29, 1991.

b. Westside Station had not paid the property taxes on the Property for the second half of 1990 and the first half of 1991 as required under the Deed of Trust (which constitutes a default under the Original Note and the Renewal Note).

The failure of Westside Station to perform any of its obligations to Dominion and its default in the payment of any principal or interest when due under the Renewal Note are defaults under the Porter Guaranty.

The failure of Westside Station to perform any of its obligations to Dominion and its default in the payment of any principal or interest when due under the Renewal are defaults under the Weiner Guaranty.

Dominion succeeded to the interest of Dominion Shenandoah under the Original Note, the Renewal Note, the Deed of Trust, the Porter Guaranty, and the Weiner Guaranty because of the merger of Dominion Shenandoah into Dominion.

Dominion did not agree to extend the maturity of the Renewal Note.

On July 22, 1991, Dominion made demand upon Westside Station to pay to Dominion the entire amount due under the Original Note, as renewed by the Renewal Note. Plaintiff's Exhibit 7.

On July 22, 1991, Dominion made demand upon Parnell J. Porter and Barbara B. Porter to pay to Dominion the entire amount due under the Porter Guaranty. Plaintiff's Exhibit 7.

On July 22, 1991, Dominion made demand upon Benjamin Weiner and Frances Weiner to pay to Dominion the entire amount due under the Weiner Guaranty. Plaintiff's Exhibit 7.

On November 11, 1991, Dominion filed this action against Westside Station, Parnell J. Porter, Barbara B. Porter, Benjamin Weiner, and Frances Weiner to collect the balance due under the Original Note, as renewed by the Renewal Note, the Porter Guaranty, and the Weiner Guaranty.

Since the filing of this action, the following defaults have occurred under the Original Note, as renewed.

a. Westside Station has not made any interest payments to Dominion.

b. Westside Station has not paid the real property taxes on the property for the second half of 1991 and the first half of 1992 as required under the Deed of Trust (which constitutes a default under the Original note and the Renewal Note).

c. Westside Station has transferred the Property to Revelstoke, L.C., in violation of the covenants in the Deed of Trust (which constitutes a default under the Original Note and the Renewal Note).

Under the terms of the Original Note and the Renewal Note, Westside Station agreed "to pay a late charge of 5% of any payment more than seven days past due."

The Original Note and the Renewal Note provide for the payment of "an attorney's fee of 25% . . . of the amount then owing and unpaid by Borrower, if services of an attorney are employed to effect collection and other expenses of collection and enforcement."

The Porter and Weiner Guaranties provide for the payment of "court costs and attorneys' fees of 20% paid or incurred by Bank in endeavoring to collect such indebtedness or any part thereof or in enforcing this Guaranty."

As of August 12, 1992, the balance due under the Original Note, as renewed by the Renewal Note, was $1,226,733.55 in principal, $136,305.09 in interest, $200.00 in late charges, and $340,809.66 in attorney's fees and collection expenses.

Parnell J. Porter, Barbara J. Porter, and Benjamin Weiner have guaranteed payment of loans made by Dominion Shenandoah to at least two other entities in which Parnell J. Porter and Benjamin Weiner are principals. Frances Weiner has guaranteed payment of loans made by Dominion Shenandoah to at least one other entity in which Parnell J. Porter and Benjamin Weiner are principals.

The stated maturities in any loan document executed by Parnell J. Porter or Benjamin Weiner or any entity controlled by them in favor of Dominion or Dominion Shenandoah reflected the understanding of the parties as to the actual maturity date.

Neither Dominion nor Dominion Shenandoah have ever agreed to extend the maturity of an obligation for a reasonable time.

Prior to 1984, Parnell Porter had financed the development of three real estate projects with Dominion Bank Northern Virginia.

In 1984, Benjamin Weiner joined Porter as a joint venturer in each of Porter's subsequent real estate projects.

Prior to the loans in question, Weiner and Porter were involved in three projects which were financed by Dominion Bank Northern Virginia, two of which were completed within three years of initiation, and the other of which was converted to permanent financing within three years of the initiation of the project. Defendant's Exhibit A.

Defendants Westside Station, Inc., and Steven and Marcia Foster have had no prior dealings with any Dominion entity incident to real estate development.

## II. *Conclusions of Law*

This case involves a negotiable instrument and is governed by Title 8.3 of the Code of Virginia. For a writing to be a negotiable instrument, § 8.3–104(1) requires that it must "be payable on demand or at a definite time . . . ." The Renewal Note in this case states that it is payable on July 1, 1991.

Section 8.3–118(f) of the Virginia Code provides that "[u]nless otherwise specified, consent to extension authorizes a single extension for not longer than the original period." Section 8.3–118 provides the rules of construction for commercial paper, and its purpose, according to the Official Comment, "is to protect holders and to encourage the free circulation of negotiable paper by stating rules of law which will preclude a resort to parol evidence for any purpose except reformation of the instrument."

In this case, the Original Note and the Renewal Note specify "otherwise" and specifically limit the circumstances under which the loan may be extended. The terms under which their maturity can be extended are expressly stated in the Original Note and the Renewal Note. Only upon payment of all accrued interest at or after the stated maturity date does Dominion have the option to renew the note for a period of time not to exceed that of the original note, which, in the instance of the Renewal Note, was for six months.

When the Renewal Note matured on July 1, 1991, Westside Station was delinquent. Thus, the option to renew the Renewal Note was not available under the terms of the Renewal Note absent some other agreement between the parties, and there was no such agreement.

Even if the rule of construction provided in § 8.3–118(f) were applicable in this case, the term of the Renewal Note was only six

months, and a single extension of the maturity would extend the maturity date only until January 1, 1992.

Section 8.1–205(4) of the Virginia Code provides that "[t]he express terms of an agrement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable, express terms control both course of dealing and usage of trade . . . ."

As part of the General Provisions of Title 8.1 of the Virginia Commercial Code, § 8.1–205 applies to all commercial contracts. *Charles H. Tompkins Co. v. Lumbermens Mutual Casualty Co.*, 732 F. Supp. 1368, 1374–75, n. 1 (E.D. Va. 1990).

Consent to an extension or wavier of a default cannot be implied solely from the course of conduct between two parties prior to the execution of a particular contractual agreement. *J. R. Hale Contracting Co., Inc. v. United New Mexico Bank*, 110 N.M. 712, 718, 799 P.2d 581, 587 (1990). In the *Hale Contracting* case, the borrower had been a customer of the bank for approximately eleven years. During the eleven-year relationship, the borrower had entered into several revolving credit notes with the bank, which were routinely renewed even though the borrower was frequently late in making payments under the notes. However, in the particular transaction which was the subject of the suit, the borrower failed to make its first interest payment on the due date, and the bank accelerated the loan twenty-three days later. The New Mexico Supreme Court held:

> Any previous conduct of the bank in accepting late payments involved other obligations. An actual intent to waive the requirement for timely payment, or to waive the contractual right to declare a default without notice, as provided for in their agreement, must be implied from the parties conduct in the performance of that obligation. *Cf. Continental Nat'l Bank of Fort Worth v. Schiller,* 89 Ill. App. 3d 216, 44 Ill. Dec. 471, 411 N.E.2d 593 (1980) (evidence that bank had accepted late payments on earlier debts insufficient to show a waiver, express or implied, of timely payments on present debt). Otherwise the express terms of the agreement would have no meaning at the time of its execution.

110 N.M. at 518, 799 P.2d at 587.[1]

Course of dealing is defined in § 8.1–205(1) of the Virginia Code as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." In this case, there has been no prior course of dealing between the Defendants and Dominion Bank Shenandoah. Although the guarantors and principals of Westside Station, Parnell J. Porter and Benjamin Weiner, had entered into other borrowing relationships with Dominion Bank of Northern Virginia, N.A., that is a separate corporation, and they may not rely upon those transactions to establish a course of dealing that would alter the terms of their loan with Dominion Bank of Shenandoah Valley.

In *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991), the court held that two previous renewals of a note over a three-year period could "hardly establish a course of dealing to automatically renew mature promissory notes without payment. A promise or mutual intent to indefinitely renew [the] promissory notes cannot be inferred from the parties' course of conduct in this instance." *Id.* at 95, 465 N.W.2d at 148.

In this case, there have been three renewals or extensions of the Original Note. At the time of each extension, Westside Station was current in its interest payments. Thus, an extension of the maturity was consistent with the express terms of the Original Note. At the maturity of the Renewal Note on July 1, 1991, however, interest payments were past due, and other defaults existed under the Renewal Note as well. A mutual intent to renew the Renewal Note when interest payments were past due and other defaults also existed cannot be inferred from the parties' course of dealing in this case and cannot be found in the express terms of the Original Note or the Renewal Note.

Under Virginia law, extrinsic evidence of course of dealing cannot be used to contravene the clear language of the Renewal Note "when such construction is unreasonable . . . ." Va. Code Ann. § 8.1–205(4); *see also, Charles H. Tompkins Co. v. Lumbermans Mutual*

---

[1] The court ultimately held that the bank's conduct after the execution of the note in holding several meetings with the borrower without mentioning its concern about the missed interest payment presented a question of fact as to whether the bank had waived the default by estoppel.

Casualty Co., 732 F. Supp. 1368 (E.D. Va. 1990); *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3 (4th Cir. 1971).

An excellent discussion of the effect of "course of dealing" and "course of performance" on a clear, unambiguous written contract is set forth in J. White and R. Summers, Uniform Commercial Code, § 3–3, pp. 121–124 (3rd ed. 1988):

> The agreement of the parties includes that part of their bargain that may be found in the course of dealing, usage of trade, or course of performance. These sources are relevant not only to the interpretation of express contract terms but may themselves constitute contract terms, and these sources may not only supplement or qualify express terms, but in appropriate circumstances, may even override express terms.
>
> The Code defines course of dealing in 1–205(1):
>
> "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." . . .
>
> What is the illegal effect of course of dealing and its cohorts, once proved? First, they may add to the express terms of the agreement. This is so even where the contract is unambiguous and complete on its face. In *Columbia Nitrogen Corp. v. Royster Co.* (relied upon by the defendants) for example, the buyer agreed to buy at least thirty-one thousands tons of phosphate per year for three years from seller. When due to market changes, buyer ordered only a fraction of the minimum, the seller sued. The trial judge refused to admit evidence of course of dealing and usage of trade purportedly showing that the contract's price and quantity terms were "mere projections to be adjusted according to market forces." The Fourth Circuit reversed and remanded.
>
> Course of dealing and its cohorts may also import an additional term imposing a duty on one party to give notice to another in a given situation, even though the express agreement is silent on the matter. Or they may impose a duty on one party to seek a given remedy within a given time even though the express agreement is silent on remedies . . . .

Third, course of dealing and its cohorts may cut down or even subtract whole terms from the express agreement of the parties . . . .

Fourth, when course of dealing and its cohorts in some way become part of the agreement, they, like express terms, supersede or vary the effect of the contractually variable Code provisions that would otherwise govern . . . .

What legal impact do course of dealing, usage of trade, and course of performance have on each other in the event of conflict? § 1–205(4) states:

*The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed whenever reasonable as consistent with each other. But when such construction is unreasonable, express terms control both course of dealing and usage of trade*, and course of dealing controls usage of trade. (Emphasis added).

Section 2–208(2) states:

The express terms of the agreement and any such course of performance as well as any course of dealing and usage of trade shall be construed whenever reasonable as consistent with each other, but when such construction is unreasonable, express terms shall control course of performance, and course of performance shall control both course of dealing and usage of trade (§ 1–205).

It would appear that the foregoing statement of law combined with that of *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3 (4th Cir. 1971), is the law governing the course of dealing claim set forth by defendants.

In considering similar cases, other courts have held that a contract, to be enforceable, must contain specific terms. In *Stansel v. American Sec. Bank*, 547 A.2d 990 (D.C. App. 1988), the plaintiff bank sued the defendants to recover the balance due on a promissory note. The defendants counterclaimed alleging that "the bank breached an enforceable oral agreement . . . to provide additional loans to [a defendant] for renovation and permanent financing of the property she purchased." *Id.* at 993. In affirming the entry of summary judgment in favor of the plaintiff, the District of Columbia Court of Appeals held that "[n]either defendant offered evidence of any specific terms of the alleged agreement, such as the exact amount of loans,

the interest rates, the terms of payment or manner of performance. Thus, their claim of breach of contract fails for lack of certainty of the contract's terms." *Id.* at 993. *See also, Price v. Wells Fargo Bank*, 261 Cal. Rptr. 735 (1989). (Oral agreement contravening loan documents that the bank would work with the plaintiffs in the repayment of notes was rejected).

In *McErlean v. Union Nat. Bank of Chicago*, 414 N.E.2d 128 (Ill. App. 1988), the plaintiff borrower sued the defendant bank for breach of an oral contract to extend additional credit. The court dismissed the plaintiff's claims of breach of contract since the complaint "failed to allege a loan commitment sufficiently definite to constitute an enforceable agreement." *Id.* at 32, holding that:

> No elements of a contract cognizable in law or equity as to the essential terms of such a contract appear [in the documentation attached as exhibits], nor are there any such elements pleaded. These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated.

*See also, Delcon Group v. Northern Trust Co.*, 543 N.E.2d 595, 602 (Ill. App. 1989).

Westside Station is in default under the Original note, as renewed by the Renewal Note.

Parnell J. Porter and Barbara B. Porter are in default under the Porter Guaranty.

Benjamin Weiner and Frances Weiner are in default under the Weiner Guaranty.

The Renewal Note provides that an attorney's fee of 25% is due, and the Guaranties provide for the recovery of attorney's fees of 20%.

Westside Station is liable to Dominion in the amount of $1,226,733.55 in principal, $136,305.09 in interest, $200.00 in late charges, and $340,809 in attorney's fees and collection expenses.

Parnell J. Porter and Barbara B. Porter are liable to Dominion under the Porter Guaranty in the amount of $1,226,733.55 in princi-

pal, $136,305.09 in interest, $200.00 in late charges, and $272,607 in attorney's fees and collection expenses.

Benjamin Weiner and Frances Weiner are liable to Dominion under the Weiner Guaranty in the amount of $1,226,733.55 in principal, $136,305.09 in interest, $200.00 in late charges, and $272,607 in attorney's fees and collection expenses.

Dominion did not breach any duty or agreement to extend the maturity of the Original Note as renewed by the Renewal Note.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Plaintiff shall have judgment against the Defendants Westside Station, Inc., Parnell J. Porter, Barbara B. Porter, Benjamin Weiner, and Frances Weiner in the principal amount of $1,226,733.55 with interest thereon from April 20, 1991, at the rate of 1% over the Commercial Base Rate of Dominion Bank, National Association, per annum until paid, $200.00 in late charges, and $340,809.66 in attorney's fees and expenses as to Westside Station, Inc., and $272,607 in attorney's fees and expenses as to Parnell J. Porter, Barbara B. Porter, Benjamin Weiner, and Frances Weiner.